# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-2920

Frank L. Gallegos, Jr., Appellant,

v.

James B. Peake, M.D.,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued September 26, 2008                    Decided December 31, 2008)

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Paul J. Hutter*, General Counsel, with whom *R. Randall Campbell*, Assistant General Counsel, *Carolyn F. Washington*, Deputy Assistant General Counsel, and *James B. Cowden*, all of Washington, D.C., for the appellee.

Before KASOLD, LANCE, and SCHOELEN, *Judges*.

SCHOELEN, *Judge*, filed the opinion of the Court. KASOLD, *Judge*, filed a concurring opinion.

SCHOELEN, *Judge*: Before the Court is an appeal by the appellant, Frank L. Gallegos, Jr., of a June 16, 2005, Board of Veterans' Appeals (Board) decision that denied entitlement to service connection for post-traumatic stress disorder (PTSD). Record (R.) at 1-16. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the following reasons, the Court will affirm the Board's decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Army from December 1966 to January 1970. R. at 19. His service records indicate that he lost 32 days for time served in confinement pursuant to a military court-martial sentence. R. at 19, 176-77; *see* 10 U.S.C. § 972. While in service, the

appellant underwent a single treatment for "nervous tension" and "situational anxiety" attributed to his ongoing divorce proceedings.  R. at 116.

In October 1997, a clinical social worker diagnosed the appellant with PTSD and depression. R. at 343; *see also* R. at 518 (clinical diagnosis of PTSD and major depressive disorder).  Thereafter, in July 2000, the appellant filed a claim seeking service connection for both disorders.  R. at 555-57. To support his claim, the appellant submitted a stressor statement in which he attested that his PTSD originated from two rapes that he suffered while imprisoned for his court-martial sentence.  R. at 556, 669.  The appellant said that he did not report the incidents out of shame, and that after they occurred, he felt suicidal, isolated, distrustful of others, and he performed his military duties poorly. *Id.*  He also attested that the assaults prompted him to request a transfer to Vietnam, but that the Army sent him to Alaska instead.[1]  R. at 642.  In Alaska, the appellant recalled, he often drank and got into fights in order to "prove that [he] was a man and get [his] anger out."  *Id.*

In December 2000, pursuant to the version of 38 C.F.R. § 3.304(f)[2] then in effect, the VA regional office (RO) in Denver, Colorado, sent a letter to the appellant requesting that he provide "alternate sources of information that would assist [VA] in evaluating your claim."  R. at 647.  The RO set forth examples of such evidentiary sources, including statements from service medical personnel, "buddy" statements, accident or police reports, physical examinations conducted for

---

[1] The record indicates that the appellant actually volunteered to transfer to Alaska in May 1967, prior to receiving his court-martial sentence.  R. at 19, 126, 176.

[2] The version of 38 C.F.R. § 3.304(f) in effect prior to March 7, 2002, provided:

> Service connection for post-traumatic stress disorder requires medical evidence diagnosing the condition in accordance with § 4.125(a) of this chapter; a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. If the evidence establishes that the veteran engaged in combat with the enemy and the claimed stressor is related to that combat, in the absence of clear and convincing evidence to the contrary, and provided that the claimed stressor is consistent with the circumstances, conditions, or hardships of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor. If the evidence establishes that the veteran was a prisoner-of-war under the provisions of § 3.1(y) of this part and the claimed stressor is related to that prisoner-of-war experience, in the absence of clear and convincing evidence to the contrary, and provided that the claimed stressor is consistent with the circumstances, conditions, or hardships of the veteran's service, the veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor.

38 C.F.R. § 3.304(f) (2001).

employment or insurance purposes, medical treatment reports, letters written during service, photographs taken during service, and pharmacy records. R. at 647-48.

The appellant underwent a VA medical examination in October 2001. R. at 750-54. Upon review of the appellant's claims file, including letters from his family detailing postservice behavioral changes (R. at 272-75), Charles Oppegard, M.D., opined that "[t]he symptoms [the appellant] gives are quite consistent with a highly traumatized experience of sexual rape to a man." R. at 753. The RO denied the appellant's claim in November 2001, finding no evidence of an in-service stressor. R. at 759-62. The appellant appealed this decision to the Board. R. at 770, 820.

On March 7, 2002, while his claim was pending at the Board, VA published a final rule amending 38 C.F.R. § 3.304(f). 67 Fed. Reg. 10,330 (Mar. 7, 2002). Specifically, VA added the following to the existing text:

> If a post-traumatic stress disorder claim is based on in-service personal assault, evidence from sources other than the veteran's service records may corroborate the veteran's account of the stressor incident. Examples of such evidence include, but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy. Evidence of behavior changes following the claimed assault is one type of relevant evidence that may be found in these sources. Examples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to: a request for a transfer to another military duty assignment; deterioration in work performance; substance abuse; episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes. VA will not deny a post-traumatic stress disorder claim that is based on in-service personal assault without first advising the claimant that evidence from sources other than the veteran's service records or evidence of behavior changes may constitute credible supporting evidence of the stressor and allowing him or her the opportunity to furnish this type of evidence or advise VA of potential sources of such evidence. VA may submit any evidence that it receives to an appropriate medical or mental health professional for an opinion as to whether it indicates that a personal assault occurred.

38 C.F.R. § 3.304(f)(3) (2002).

In September 2002, the RO sent the appellant a Statement of the Case (SOC) containing the full text of the amended regulation. R. at 804-18. In June 2003, the appellant submitted a statement from his ex-wife, which described his substance abuse, cheating, and violent tendencies. R. at 866,

3

871. That same month, the appellant testified at a Board hearing, during which his representative cited the amended version of § 3.304(f)(3) and pointed to examples of the appellant's behavioral changes claimed to be indicative of an in-service assault. R. at 842-56. The appellant and his representative also discussed with the Board chairman various alternative sources of evidence that allegedly offered support for the appellant's claim. R. at 853-55.

The Board issued a decision in December 2003 remanding the appellant's claim for further development in light of the changes to 38 C.F.R. § 3.304(f). R. at 858-63. Citing the amended regulation, the Board found that although "the RO noted in its November 2001 rating decision that the veteran could establish service connection through alternate sources of evidence which document behavioral changes after the alleged incident, the RO did not actually determine if such evidence was present." R. at 860. Accordingly, the Board ordered the RO to afford the appellant the opportunity to submit additional supporting evidence and to subsequently readjudicate the claim. R. at 861-62. In January 2004, the appellant provided a statement to the RO detailing his destructive behavior following the alleged in-service assault. R. at 875.

In a letter dated March 2004, the RO requested that the appellant submit "evidence that [PTSD] existed from military service to the present time." R. at 883. The letter also provided examples of evidence that "w[ould] help [VA] make [its] decision," including dates of in-service medical treatment, "buddy" statements, statements from service medical personnel, examination reports conducted for employment and insurance purposes, postservice medical records, and pharmacy records. R. at 883-84. The appellant received a followup medical opinion from Dr. Oppegard in October 2004. R. at 899-903.

In January 2005, the RO issued a Supplemental Statement of the Case (SSOC) that readjudicated, and ultimately denied, the appellant's claim for service connection. R. at 927-33. The following month, the appellant asked VA to provide him a copy of his service records, which he alleged would show hospitalizations for fighting and the loss of his military driver's license on account of bad behavior. R. at 937. The appellant's February 2005 statement also quoted verbatim a portion of the amended version of 38 C.F.R. § 3.304(f). *See id.*

The Board affirmed the adverse RO determination in the June 2005 decision here on appeal. R. at 16. Applying the amended version of § 3.304(f), the Board determined that the appellant "ha[d]

been informed that he could submit evidence from sources other than the service records in support of his PTSD claim." R. at 12. However, the Board noted, credible evidence did not exist to corroborate the appellant's account of his in-service stressor. R. at 13. The Board pointed out that the appellant's testimony alone, as a matter of law, could not establish the event, and that his service records contained no reference to sexual assault or evidence of behavioral changes. R. at 6, 11-12 (citing *Moreau v. Brown*, 9 Vet.App. 389, 395 (1996); *Dizoglio v. Brown*, 9 Vet.App. 163, 166 (1996)). Further, the Board stated that the appellant lacked any other form of outside evidence that corroborated his account. R. at 8-10, 13-14. Accordingly, the Board concluded that, in the absence of a confirmed stressor, the appellant could not receive an award of service connection for PTSD. R. at 15.

## II. CONTENTIONS OF THE PARTIES

On appeal to the Court, the appellant asserts that the March 2002 amendment of 38 C.F.R. § 3.304(f) is favorable to him, and that *Karnas v. Derwinski*, 1 Vet.App. 308 (1991), requires that the version of an amended regulation most favorable to the claimant be applied to pending claims. Appellant's Brief (Br.) at 4-6; Appellant's Supplemental (Supp.) Br. at 3-4. The appellant recognizes that his argument depends on the continuing viability of the rule of retroactivity set forth in *Karnas*. Appellant's Br. at 6. However, he contends that, while overruled in other respects, *Karnas* remains the law in cases where a regulation is amended in a manner favorable to the veteran while the claim is pending. Appellant's Supp. Br. at 3-4. The appellant further argues that, should the Court find that the amended version of 38 C.F.R. § 3.304(f) applies to his claim, it should also determine that VA failed to provide notice that complied with the amended regulation. Appellant's Br. at 6-13; Reply Br. at 1-8. According to the appellant, after VA promulgated the amended version of 38 C.F.R. § 3.304(f), it was required to advise him that he could submit sources of evidence other than service records or evidence of postassault behavioral changes to corroborate his account of the in-service stressor; to inform him of the types of evidence that could constitute "credible supporting evidence" of a stressor under that regulation; and to readjudicate his claim for service connection in light of any new evidence submitted. *See* Appellant's Br. at 6-9; Reply Br. at 1-5. He believes that VA neglected to undertake these actions. Appellant's Br. at 6. The appellant asserts that this error

5

prejudiced him in the adjudication of his claim, because "[i]f [he] had been given the required notification, then the record may well have contained the necessary credible supporting evidence as contemplated by 38 C.F.R. § 3.304(f)(3)." Appellant's Br. at 13.

The Secretary agrees that the amended version of § 3.304(f) applies to the appellant's claim (Secretary's Supp. Br. at 10), though his reasoning differs from that of the appellant. The Secretary disputes that the Court's holding in *Karnas*, *supra*, may be employed to determine whether an amended regulation has impermissible retroactive effects when applied to a pending claim, as he argues that *Karnas* was overruled by the United States Court of Appeals for the Federal Circuit (Federal Circuit) in *Dyment v. Principi*, 287 F.3d 1377 (Fed. Cir. 2002), *Bernklau v. Principi*, 291 F.3d 795 (2002), and *Kuzma v. Principi*, 341 F.3d 1327 (Fed. Cir. 2003). Secretary's Supp. Br. at 5. Rather, under the test set forth by the Federal Circuit in *Princess Cruises, Inc. v. United States*, 397 F.3d 1358 (Fed. Cir. 2005), which the Secretary argues is the appropriate test to determine whether a regulation has an impermissibly retroactive effect, the amended version of § 3.304(f) may be properly applied to the appellant's claim. *Id.* at 2, 9-10 (citing *Rodriguez v. Peake*, 511 F.3d 1147 (Fed. Cir. 2008)). Moreover, the Secretary alleges, VA did in fact apply the amended regulation to the appellant's claim: he was informed of the alternative forms of evidence that could be used to establish an in-service stressor in the September 2002 SOC and December 2003 Board remand order, and his claim was subsequently readjudicated in the January 2005 SSOC. Secretary's Br. at 11-13. The Secretary also contends that the appellant demonstrated actual knowledge of the contents of the amended § 3.304(f), thereby rendering any notice defect that may have occurred nonprejudicial. *Id.* at 11-12 (citing *Sanders v. Nicholson*, 487 F.3d 881, 889 (Fed. Cir. 2007), *cert. granted sub nom.*, *Peake v. Sanders*, 128 S. Ct. 2935 (2008)).

On June 12, 2008, the Court ordered supplemental briefing to address the impact of the Federal Circuit's decision in *Rodriguez*, *supra*, which was decided after initial briefing. In particular, the Court requested that the parties analyze what impact, if any, the Federal Circuit's holding in *Rodriguez* has on the rule of retroactivity set forth in *Karnas*, *supra*.

6

The Court recognizes, as an initial matter, the questions raised by the parties with regard to the continuing viability of the Court's holding in *Karnas*, *supra*. However, it is not necessary to resolve those matters here today, as both parties agree that the amended version of 38 C.F.R. § 3.304(f) may be properly applied to the appellant's claim. As an Article I Court, we are "not constitutionally bound by the case or controversy restraints on the judicial power of Article III courts." *Nolan v. Nicholson*, 20 Vet.App. 340, 348 (2006) (citing 38 U.S.C. § 7251; *Mokal v. Derwinski*, 1 Vet.App. 12, 14 (1990)). As a matter of policy, however, the Court adheres to the case or controversy requirements followed by the Article III courts, and thus will not decide hypothetical cases. *Id.* (citing *Mokal*, 1 Vet.App. at 15); *see United States v. Johnson*, 319 U.S. 302, 305 (1943) (noting that Article III requires an "'honest and actual antagonistic assertion of rights' to be adjudicated" (quoting *Chicago & G.T. Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892))).

Accordingly, the only question remaining before the Court is whether the appellant did, in fact, receive the benefit of the regulatory changes to § 3.304(f). In order to answer this question, we must first determine what, specifically, is required of VA under the revised regulation and then assess whether VA satisfied those requirements.

## A. The 38 C.F.R. § 3.304(f)(3) Notice Requirement

With the addition of § 3.304(f)(3) in March 2002, VA codified its existing internal policies that provided for additional development assistance in claims for PTSD based on personal assault. *See* M21-1 Manual, pt. III, para. 5.14(c) (Feb. 20, 1996). By doing so, VA recognized that "in personal assault cases[,] the Secretary has undertaken a special obligation to assist a claimant . . . in producing corroborating evidence of an in-service stressor." *Patton v. West*, 12 Vet.App. 272, 280 (1999). In accordance with this "special obligation," § 3.304(f)(3) places a heightened burden of notification on VA in claims for service connection for PTSD based on in-service personal assault. First, the RO must inform the claimant that he may submit alternative forms of evidence, that is, evidence other than service records, to corroborate his account of an in-service assault, and suggest potential sources for such evidence. 38 C.F.R. § 3.304(f)(3); *see Bradford v. Nicholson*, 20 Vet.App. 200, 206 (2006); *Patton*, 12 Vet.App. at 281-82 (noting that the RO must send the claimant a "special PTSD personal-assault letter" and questionnaire to assist VA in identifying alternative

sources of evidence to establish an in-service stressor (citing M21-1, pt. III, para. 5.14(c)(6)-(7))). The claimant should also be notified that, alternatively, evidence of behavioral changes following the alleged in-service assault may constitute "credible supporting evidence of the stressor" under § 3.304(f)(3). 38 C.F.R.§ 3.304(f)(3); *see Bradford*, 20 Vet.App. at 206. Second, VA must assist the claimant in the submission of alternative sources of evidence, by providing additional time for the claimant to submit such evidence after receipt of the personal-assault letter and, where appropriate, by obtaining evidence on the claimant's behalf. 38 C.F.R.§ 3.304(f)(3); *Patton*, 12 Vet.App. at 282.

In the Court's view, the notification requirement of § 3.304(f)(3) is akin to the notification requirement set forth in the VCAA. In November 2000, Congress enacted the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (codified as amended at 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126). Section 5103 of the VCAA, codified at 38 U.S.C. § 5103, imposes a "duty of affirmative notification on VA," requiring that the Agency inform the claimant "prior to the initial decision in the case as to the evidence that is needed." *Mayfield v. Nicholson*, 444 F.3d 1328, 1333 (Fed. Cir. 2006) (citing *Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d 1334, 1344-45 (Fed. Cir. 2003); 66 Fed. Reg. 45,620 (Aug. 29, 2001)); *see* H.R. REP. 106-781, at 9 (2000), 2000 WL 1097456. In *Mayfield*, the Federal Circuit noted that the purpose of section 5103 notification is "to ensure that the claimant's case is presented to the initial decisionmaker with whatever support is available." *Mayfield*, 444 F.3d at 1333; *see* 146 CONG. REC. H9912-01, H9914 (Oct. 17, 2000), 2000 WL 1532572.

Like 38 U.S.C. § 5103, § 3.304(f)(3) contemplates that a claimant seeking service connection for PTSD based on in-service assault will receive the required notification and an opportunity to submit evidence prior to the adjudication of his claim. In reaching this conclusion, the Court notes the language of the regulation itself, which states that

> VA will not deny a post-traumatic stress disorder claim that is based on in-service personal assault *without first advising the claimant* that evidence from sources other than the veteran's service records or evidence of behavior changes may constitute credible supporting evidence of the stressor *and allowing him or her the opportunity* to furnish this type of evidence or advise VA of potential sources of such evidence.

38 C.F.R. § 3.304(f)(3) (emphasis added). Similarly, in VA's comments accompanying the

publication of the final rule in the Federal Register, VA explained the addition of the language in § 3.304(f)(3) as "necessary to ensure that VA does not deny such claims simply because the claimant did not realize that certain types of evidence may be relevant to substantiate his or her claim." 67 Fed. Reg. at 10,300. Thus, because, like the VCAA, § 3.304(f)(3) provides for preadjudicatory notification with the hope that the claimant can be an informed participant in his claim and that his claim will be adjudicated in light of all potentially relevant evidence, *see* 67 Fed. Reg. at 10,331, the Court believes that VA's compliance with that provision is properly and analogously guided by the Federal Circuit's decision in *Mayfield*, *supra*.

> That decision provides that VA's
>
> duty of affirmative notification is not satisfied by various post-decisional communications from which a claimant might have been able to infer what evidence the VA found lacking in the claimant's presentation.
>     . . . .
> This is not to say that . . . notification must always be contained in a single communication from the VA . . . . What the statute and regulation require is that the claimant be given the required information prior to the VA's decision on the claim and in a form that enables the claimant to understand the process, the information that is needed, and who will be responsible for obtaining that information.

*Mayfield*, 444 F.3d at 1333; *see also Wilson v. Mansfield*, 506 F.3d 1055, 1059 (Fed. Cir. 2007); *Pelegrini v. Principi*, 18 Vet.App. 112, 119-20 (2004).

The Court acknowledges that while 38 U.S.C. § 5103 requires notification prior to the *initial* adjudication of the claim, "[u]pon receipt of a complete of substantially complete application," *see Pelegrini*, 18 Vet.App. at 120, this timing may not be feasible in claims for service connection for PTSD based on an allegation of in-service assault. Rather, it may not be evident until after the initial adjudication of a claim that the alleged stressors relate to a personal assault. Therefore, unlike the notification requirement of 38 U.S.C. § 5103, § 3.304(f)(3) is not applicable to a claim for service connection for PTSD until VA knows or has reason to know of the existence of evidence raising the possibility of an in-service assault. At that point, VA must (1) furnish a "deliberate act of notification" informing the appellant of the content of the amended law and of his ability to submit new evidence in accordance with that provision, and (2) subsequently adjudicate the appellant's claim in light of any new evidence submitted. *See Mayfield*, 444 F.3d at 1333. This notification

may be properly issued either before or after the initial adjudication of the veteran's claim, contingent upon the timing of VA's knowledge that the claim may be based on an in-service assault. The Court reaches this conclusion by adopting by analogy the remedy for timing defects set forth in *Prickett v. Nicholson*, 20 Vet.App. 370, 376 (2006). In *Prickett*, the Court recognized that, where strict adherence to VCAA timing-of-notification requirements is not possible, "VA may cure timing defects through compliance with proper remedial measures[, including] . . . . (1) [t]he issuance of a fully compliant VCAA notification, followed by (2) readjudication of the claim" (citing *Mayfield*, 444 F.3d at 1333-34; *Pelegrini*, 18 Vet.App. at 122-24). Like *Prickett*, strict compliance with § 3.304(f)(3)'s preadjudicatory notification requirement may not be possible here, as VA may lack evidence of an alleged in-service assault until after one or more adjudications of the appellant's claim. However, where VA has adjudicated the claim prior to providing the notification required by § 3.304(f)(3), VA may cure that defect by furnishing a fully compliant notification and readjudicating the appellant's claim in light of any new evidence submitted. *See Mayfield*, 444 F.3d at 1333-34; *Prickett*, *supra*; *Pelegrini*, 18 Vet.App. at 122-24.

## B. VA's Compliance with § 3.304(f)(3)

The Board's determination that a communication satisfies the notice requirement of 38 U.S.C. § 5103 is a factual finding that the Court reviews under the "clearly erroneous" standard of review. *See Prickett*, 20 Vet.App. at 378. The Court in this case must make a similar factual inquiry, namely, whether a given communication provides adequate notification to the appellant under 38 C.F.R. § 3.304(f)(3). As such, we believe that, as in *Prickett*, the Court should employ the "clearly erroneous" standard of review when reviewing the Board's determination that a communication fulfills the § 3.304(f)(3) regulatory notice requirement. VA's failure to provide compliant notice may constitute remandable error. *See Quartuccio v. Principi*, 16 Vet.App. 183, 187-88 (2002).

Analyzing the appellant's claim under the standards delineated in *Mayfield*, *supra*, the Court holds that VA did not provide the appellant adequate notice under the terms of the amended § 3.304(f). The Court recognizes that the appellant could not receive § 3.304(f)(3) notification prior to the initial adjudication of his claim, because when the amended regulation took effect in March 2002, his claim had already been denied by the RO (R. at 759-62) and was pending on appeal to the Board. Once the amended regulation took effect, however, VA was obligated to issue fully

compliant notice and readjudicate the appellant's claim in light of any new evidence that had been submitted. *Mayfield*, 444 F.3d at 1333-34; *Prickett*, *supra*; *Pelegrini*, 18 Vet.App. at 122-24. VA failed to do so in this case.

From the text of its decision, it is not entirely clear which documents the Board relied upon as providing the requisite notice under § 3.304(f)(3). Rather, the Board stated, without elaboration, that "[t]he veteran has been informed that he could submit evidence from sources other than the service records in support of his PTSD claim" (R. at 12), and that "the RO made an attempt to verify the veteran's alleged stressors, but there is no credible supporting evidence to corroborate his statements regarding the alleged sexual trauma" (R. at 13). Upon review of these factual determinations, however, the Court finds that they are clearly erroneous.

To be adequate, notice – whether in the context of the VCAA or not – has two core elements: (1) It must give the appellant notice of the content of the law, *and* (2) explicitly provide the claimant the opportunity to utilize that information by submitting further evidence. *See Mayfield*, 444 F.3d at 1333 (noting that predecisional notification "is required to have different contents from the post-decisional notices, and it is designed for different purposes – to ensure that the claimant's case is presented to the initial decisionmaker with whatever support is available"); *see also Wilson* and *Pelegrini*, both *supra*. Additionally, as noted above, the Federal Circuit established in *Mayfield* that VA satisfies its notification duties only by providing a "deliberate act of notification" prior to the adjudication of the veteran's claim, "not an assemblage of bits of information drawn from multiple communications issued for unrelated purposes." *Mayfield*, 444 F.3d at 1333. The various communications in the record do not satisfy these criteria.

Although the September 2002 SOC transcribed the text of the amended § 3.304(f) (R. at 813-14), by its nature, an SOC cannot provide compliant notification under that provision. Rather, the SOC is a decisional document that provides notification to the veteran in the context of an adjudication of his claim. Thus, the timing of such a communication prevents the Court from plausibly construing it as the "deliberate act of notification" contemplated by *Mayfield*. Further, the contents of the September 2002 SOC are also deficient, in that they did not explicitly advise the appellant that § 3.304(f) had been recently amended, nor did they inform him that he could submit new evidence pursuant to the changed provision. *See* R. at 804-18. The December 2003 Board

11

remand order (R. at 858-863) and the January 2005 SSOC (R. at 926-33) suffer similar defects, as both are also decisional documents. Moreover, the January 2005 SSOC contained no mention of the amended regulation. The March 2004 letter (R. at 883-87), while not a decisional document, is not content-compliant notice under § 3.304(f)(3). Like the September 2002 SOC and the January 2005 SSOC, the March 2004 letter did not inform the appellant of the amended terms of § 3.304(f)(3) or give him the opportunity to furnish additional evidence in accordance with that provision. The Court therefore finds that VA did not provide adequate notice to the appellant under 38 C.F.R. § 3.304(f)(3).

The Court, however, is statutorily obligated to "take due account of the rule of prejudicial error."[3] 38 U.S.C. § 7261(b)(2); *Newhouse v. Nicholson*, 497 F.3d 1298, 1302-03 (Fed. Cir. 2007); *Conway v. Principi*, 353 F.3d 1369, 1374 (Fed. Cir. 2004). An error is prejudicial when it "affects a substantive right that a statutory or regulatory provision was designed to protect" and "affects the essential fairness of the adjudication." *Overton v. Nicholson*, 20 Vet.App. 427, 434-35 (2006) (citing *McDonough Power Equip. v. Greenwood*, 464 U.S. 548, 553 (1984); *Intercargo Ins. Co. v. United States*, 83 F.3d 391 (Fed. Cir. 1996); *Parker v. Brown*, 9 Vet.App. 476 (1996)). In order for the Court to find that a notice error is not prejudicial, it must find that, "despite the error, the adjudication was nevertheless essentially fair." *Overton*, 20 Vet.App. at 435 (citing *McDonough*, *supra*).

In this case, it is evident that VA's failure to provide notice in accordance with 38 C.F.R. § 3.304(f)(3) did not constitute prejudicial error. Assuming arguendo that the appellant put forth sufficiently specific allegations of prejudice (*see* Appellant's Br. at 13), the Court holds that VA has rebutted those allegations and demonstrated that no prejudice resulted from the § 3.304(f)(3) notice error. At several points in the record, the appellant demonstrated his actual knowledge of the amended provisions of § 3.304(f) and his ability to submit supporting evidence thereunder. *See Sanders*, 487 F.3d at 889 (holding that the Secretary may demonstrate that an error is nonprejudicial by a showing that "the purpose of the notice was not frustrated, e.g., by demonstrating . . . that any

---

[3] Although our concurring colleague would hold that a decisional document can provide notice that complies with the regulation, the guidance provided by the Federal Circuit in *Mayfield* makes clear that notice is not properly provided through this type of document. Accordingly, the effect of relevant information in decisional documents is better analyzed when dealing with the issue of prejudice.

12

defect was cured by actual knowledge on the part of the claimant"); *Overton*, 20 Vet.App. at 438-39 (finding that the actions of an attorney could be attributed to his client when assessing prejudice in the notice error context). During his June 2003 hearing, for example, the appellant's representative read the text of § 3.304(f)(3) aloud and remarked: "Through Mr. Gallegos' testimony today[,] we're going to show that he did have a dramatic behavior change after his incident when he was sexually assaulted while serving in the stockade." R. at 843-44. The appellant then proceeded to provide testimony on this issue, citing several examples of behavioral changes alleged to have followed the assault, and also discussed alternative sources of evidence potentially supportive of his claim. R. at 846-55. The appellant's February 2005 statement also quoted verbatim a portion of the amended version of 38 C.F.R. § 3.304(f). R. at 937. Like the June 2003 hearing testimony, this statement illustrates the appellant's actual knowledge of his ability to submit evidence of behavioral changes to corroborate his account of the in-service assault, and compels a finding that VA's failure to provide adequate notice pursuant to § 3.304(f)(3) was not prejudicial to his claim. *See Sanders* and *Overton*, both *supra*.

Moreover, in December 2003, the appellant received a Board remand for the specific purpose of affording him the opportunity to support additional evidence in light of the changes to § 3.304(f). R. at 861-62. He subsequently submitted new evidence in support of his claim. *See*, *e.g.*, R. at 875. The Court recognizes that a decisional document such as the December 2003 remand order cannot serve as the "deliberate act of notification" contemplated by *Mayfield*, 444 F.3d at 1333. However, because it contained the full text of the amended regulation (R. at 859-60) and afforded the appellant the opportunity to submit further evidence in accordance with the new provision, the Board remand order is a factor to be considered when concluding that there was no prejudicial error in this case. Ultimately, the record makes clear that the appellant knew what type of evidence, pursuant to the revised regulation, could be submitted to substantiate his stressor, that he was aware that he could submit such evidence, and that he did furnish additional evidence in support of his claim. Therefore, the Court cannot hold that the process is "essentially unfair" simply because the evidence submitted was ultimately found by the Board to be insufficient to corroborate his stressor and prove his claim. *Overton*, 20 Vet.App. at 435. As such, the June 2005 Board decision must be affirmed on appeal. *See* 38 U.S.C. § 7261(b)(2); *Newhouse* and *Conway*, both *supra*.

13

## IV. CONCLUSION

After consideration of the appellant's and the Secretary's pleadings, and a review of the record, the Board's June 16, 2005, decision is AFFIRMED.

KASOLD, *Judge*, concurring: I agree with the majority's determination that Mr. Gallegos had actual knowledge of the amended provisions of 38 C.F.R. § 3.304(f)(3) and of the kinds of evidence he could present in support of his claim. I also agree with the majority's determination that the SOC issued to Mr. Gallegos could not provide adequate notice because it did not notify him that he could submit the additional evidence suggested by § 3.304(f)(3). However, as discussed below, I do not believe documents that are part decisional in nature can never provide the advice required by § 3.304(f)(3), and, in this instance, I believe a 2003 Board remand order fulfilled all the substantive advice requirements of § 3.304(f)(3).

Although I generally agree that the advice required by § 3.304(f)(3) is "*akin* to the notification requirements set forth in the VCAA" (emphasis added), I do not believe the similarity requires the strict application of the holding in *Mayfield v. Nicholson*, 444 F.3d 1328, 1333 (Fed. Cir. 2006)[hereinafter *Mayfield* II] that a decisional document never can serve to provide the notice required by 38 U.S.C. § 5103(a). Unlike section 5103(a) notice, which is to be provided upon receipt of a completed or substantially completed application, the advice required by § 3.304(f)(3) only needs to be provided before the Secretary denies a claim. It is axiomatic that a claim is not finally denied until a final Board decision is rendered. 38 U.S.C. § 7104; *Bingham v. Nicholson*, 421 F.3d 1346, 1348-49 (Fed. Cir. 2005). This is not to say that the advice required by § 3.304(f)(3) should not be provided at the earliest time and before an initial denial of the claim, but the regulation should not be read to mean that when a mistake is made it cannot be corrected by providing the required advice in a SOC or Board remand order, along with notice that the alternate evidence may yet be submitted, and thereafter followed by another decision on the claim by the agency of original jurisdiction (AOJ). *See Prickett v. Nicholson*, 20 Vet.App. 370, 377 (2006).

Further, section 5103(a) necessitates "notice" how to substantiate a claim and who should provide what, if anything, *see Mayfield II, supra*, whereas § 3.304(f)(3) requires the Secretary to "advise" the claimant of alternative sources of evidence. An SOC is, by statute, a statement that

14

provides the claimant 1) a summary of the evidence, 2) a cite to pertinent statutes and regulations and a discussion of how each affected the Secretary's decision, and 3) a decision on each issue and the reasons for such decision. 38 U.S.C. § 7105 (d)(1). Thus, although an SOC is a decisional document, it is also a document that is intended to advise the claimant how regulations and statutes affected the decision. I see no reason why the advice required by § 3.304(f)(3), if erroneously not provided prior to the initial decision on the claim, cannot be provided in the SOC sufficient to satisfy the requirements of that section, when the claimant is further advised that he can still submit the alternate evidence and the matter is readjudicated by the AOJ if and when such evidence is submitted, and I do not believe we should impose a per se rule that the SOC never can suffice to correct a timing error under § 3.304(f)(3).

Similarly, I see no reason why a Board remand order cannot satisfy the content-advice requirements of § 3.304(f)(3), and in this instance, I believe it did so. Specifically, a 2003 Board remand order specifically advised Mr. Gallegos of the forms of alternative evidence that he could submit, and provided the text of and a citation to § 3.304(f)(3). R. at 859-60. It also ordered that the RO "afford the veteran the opportunity to submit any additional evidence in support of his claim for service connection for PTSD," adding that Mr. Gallegos "is advised that this information is necessary to obtain supportive evidence of the stressful events and that he must be as specific as possible." R. at 61. The 2003 Board remand order provided all of the advice required by § 3.304(f)(3), and it was followed by continued development of the evidence and another decision. There simply is no reason to issue a per se rule to the effect that documents that are in-part decisional may not also satisfy the advice requirement of § 3.304(f)(3).