Citation Nr: 1736701 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 12-04 472 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for hypertension (HTN), to include as secondary to service-connected degenerative joint disease (DJD) with spondylosis of the lumbar spine (low back disability).

2. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD), to include as secondary to a service-connected low back disability.

3. Entitlement to a total disability rating based upon individual unemployability (TDIU) due to service-connected disabilities.


ATTORNEY FOR THE BOARD

Jane R. Lee, Associate Counsel


INTRODUCTION

The Veteran served on active duty from August 1990 to November 1990 and May 1991 to June 1993.

This appeal is before the Board of Veterans' Appeals (Board) from November 2009 and April 2010 rating decisions of a Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee. The November 2009 rating decision, in pertinent part, denied service connection for PTSD and denied a TDIU. The April 2010 rating decision, in pertinent part, denied service connection for HTN, claimed as high blood pressure.

In November 2014, July 2015, and February 2016, the Board remanded the issues for further evidentiary development. A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268, 271 (1998). While substantial compliance is required, strict compliance is not. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (citing Dyment v. West, 13 Vet. App. 141, 146-47 (1999)).

In this case, the AOJ substantially complied with the Board's February 2016 remand instructions by mailing the Veteran a letter notifying him of his responsibility to report for any scheduled examination and to cooperate, and the consequences for failure to report for a VA examination without good cause; providing June 2016 VA psychiatric and PTSD examinations; obtaining a July 2016 VA addendum opinion regarding HTN; and readjudicating the claims in a May 2017 Supplemental Statement of the Case (SSOC).

In the July 2015 decision, the Board referred the issue of entitlement to service connection for a gastrointestinal disorder to the Agency of Original Jurisdiction (AOJ) for appropriate action, pursuant to 38 C.F.R. § 19.9(b) (2016). In November 2015, the Appeals Management Center (AMC) issued a memorandum inferring the service connection issue. However there is no indication that any further development has been completed. This issue was not adjudicated by the AOJ, and is thus again REFERRED for appropriate action.

The issue of entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.


FINDINGS OF FACT

1. Resolving all doubt in his favor, the Veteran's current HTN is aggravated by his service-connected low back disability and its prescribed medications.

2. Resolving all doubt in his favor, the Veteran's current diagnosis of PTSD is caused by in-service military sexual trauma (MST).


CONCLUSIONS OF LAW

1. The criteria for service connection for HTN have been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.310 (2016).

2. The criteria for service connection for a PTSD due to MST have been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304(f) (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Preliminary Matter

In this case, the Veteran did not raise any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

II. Service Connection Claims

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Service connection requires: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Caluza v. Brown, 7 Vet. App. 498 (1995).

Service connection may also be established on a secondary basis for a disability that is shown to be proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. Id.; Allen v. Brown, 7 Vet. App. 439 (1995) (en banc). Any increase in the severity of a nonservice-connected disability that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the nonservice-connected disability, will be itself service-connected. 38 C.F.R. § 3.310(b).

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert, 1 Vet. App. at 49. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant.

Hypertension

In his January 2010 claim, the Veteran contended that his HTN was secondary to his service-connected low back disability.

Service treatment records (STRs) include a January 1990 enlistment examination report for the Army National Guard that reflects a blood pressure reading of 106/80 and the Veteran's denial of high or low blood pressure. A December 1992 Medical Evaluation Board examination report reflects a blood pressure reading of 132/82, the Veteran's denial of high or low blood pressure, and that the Veteran's only medical issue was chronic back pain.

VA treatment records reflect a diagnosis of essential HTN since 2002 and that the Veteran was on medication for blood pressure since September 2002. In May 2008, the assessment was essential HTN that was well-controlled with weight loss alone. In May 2012, the Veteran's HTN was assessed as stable with medications.

A November 2009 VA spine examination report reflects that the Veteran reported taking narcotic pain medications and anti-inflammatories for his low back pain, and flare-ups on a daily basis that were related to walking. He described his pain during flare-ups to be a 10 out of 10, but that his resting pain was also "quite bad as well."

A February 2010 VA examiner reviewed the Veteran's claims file and noted the blood pressure readings in his STRs. The Veteran reported a diagnosis of HTN around 1992, that no medications were prescribed, and that his blood pressure was elevated. He reported that his blood pressure medications were prescribed by VA in 1993 to 1995. He noted that his blood pressure was still high and not adequately controlled. His blood pressure readings were 154/89, 144/86, and 138/82 at the examination. The VA examiner found that the Veteran's HTN was likely essential as the majority of cases of HTN were essential and as the Veteran's treatment records referred to essential HTN. She opined that it was less likely than not that his HTN was caused by his chronic low back pain, although, based on review of medical literature, it was at least as likely as not that his HTN was aggravated by his chronic low back pain.

A January 2011 VA spine examination report reflects that the Veteran reported flare-ups of back pain once every week with any type of bending over or walking, which was relieved with pain medication and lying down.

A January 2011 VA examiner noted HTN with an onset in 1991 or 1992, which was currently intermittent with remissions. The Veteran felt that his HTN was due to his back pain, although his VA treatment records showed improvement with an extra dose of blood pressure medication with elevated blood pressure levels. His blood pressure levels were 121/67, 135/84, and 122/71. He was diagnosed with essential HTN, which was stable with medications.

In March 2015, the Veteran contended that prolonged use of various combinations of medications resulted in the development of HTN.

An April 2015 VA examiner opined that, based on review of the Veteran's medical records and medical literature, the Veteran's HTN was likely essential, as were the majority of cases of HTN and as his records referred to essential HTN and a family history of HTN. She also opined that it was less likely than not that the Veteran's HTN was caused by chronic low back pain. However, she opined that it was at least as likely as not that his HTN was aggravated by his low back pain. She then stated that such aggravation would likely be temporary during pain flare-ups, but that she could not speculate if such aggravation was permanent. She also noted that his HTN was found to be controlled.

A July 2016 VA examiner found that, based on review of the Veteran's claims file, especially his in-service blood pressure readings, there was no evidence of persistent HTN in his STRs. Therefore, she opined that it was less likely than not that his HTN was incurred during service. Rather, she stated that it was likely that his HTN was essential, as his records referred to essential HTN and a positive family history of HTN. She noted that medical literature indicated that HTN was about twice as common in individuals who had one or two hypertensive parents, and that it tended to be more common and more severe, occurred earlier in life, and was associated with greater target-organ damage in African Americans. Accordingly, she opined that it was less likely that HTN was caused by low back pain or medications used for that condition, but rather that it was likely essential. Additionally, she noted that it appeared that the Veteran began taking medication for HTN in September 2002, at which time there was no reference to back pain or use of non-steroidal anti-inflammatories. However, the VA examiner opined that, based on review of medical literature, it was at least as likely as not that the Veteran's HTN was aggravated by low back pain and non-steroidal anti-inflammatories taken to treat his low back disability. Specifically, she stated that aggravation of HTN due to pain would likely be during pain flare-ups, and that it was less likely than not permanent.

VA treatment records from September to October 2016 reflect an assessment of controlled HTN and a past medical history list that included benign essential HTN.

An October 2016 VA back examination report reflects that the Veteran did not report flare-ups of his low back disability.

A November 2016 VA back examination report reflects a diagnosis of DJD with spondylosis of the lumbar spine, which was manifested by sharp, constant low back pain that radiated to his bilateral lower extremities. The Veteran reported flare-ups of excruciating pain that occurred after prolonged sitting, standing, or walking and after heaving lifting, which occurred two to three times a week and lasted two weeks to a month with a severity of 10 out of 10.

A March 2017 VA treatment record reflects that the active medical issue list included benign essential HTN, which was well-controlled with current medication.

As an initial matter, the Veteran is service-connected for a low back disability. Additionally, the evidence shows that the Veteran has a current diagnosis of HTN. As such, the issue of entitlement to service connection for HTN secondary to the Veteran's service-connected low back disability depends on whether the low back disability caused or aggravated the Veteran's HTN.

The February 2010, April 2015, and July 2016 VA examiners all opined that it was at least as likely as not that the Veteran's HTN was aggravated by his low back disability, specifically his low back pain. However, the April 2015 VA examiner stated that such aggravation would likely be temporary during pain flare-ups, but that she could not speculate if the aggravation was permanent. The July 2016 VA examiner then opined that the aggravation of HTN due to low back pain would likely be during pain flare-ups, and that it was less likely than not permanent.

The Board notes that, although the October 2016 VA examination report reflects no flare-ups, the November 2009, January 2011, and November 2016 VA spine examination reports reflect flare-ups. In November 2009, the Veteran reported daily flare-ups that were related to walking. In January 2011, he reported flare-ups of back pain once every week with any type of bending over or walking. In November 2016, he reported flare-ups of excruciating pain that occurred after prolonged sitting, standing, or walking and after heavy lifting, which occurred two to three times a week and lasted two weeks to a month. As such, despite the VA examiners' statements regarding the aggravation of HTN being less likely to be permanent as they likely occurred during pain flare-ups, the evidence regarding the frequency of flare-ups of his low back disability demonstrates that his flare-ups were weekly, if not daily. As such, the Board finds that they are of such a frequency that any aggravation resulting from such flare-ups is recurrent and thus is best characterized as being permanent.

In consideration of the foregoing, and resolving reasonable doubt in favor of the Veteran, the Board finds that the criteria for service connection for HTN, as secondary to a service connected low back disability, have been met. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53-56.

Posttraumatic Stress Disorder

The Veteran raises various possible origins of his PTSD, including in-service MST, a post-service physical assault at his workplace, and prolonged use of various combinations of medications.

Service connection for PTSD requires: (1) medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a) (conforming to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV) (recently amended as the DSM-V)); (2) a link, established by medical evidence, between current symptoms and an in-service stressor; and (3) credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f).

The law provides that if a PTSD claim is based on an in-service personal assault, evidence from sources other than a veteran's service records may corroborate the veteran's account of the stressor incident. Gallegos v. Peake, 22 Vet. App. 329 (2008); see 38 C.F.R. § 3.304(f)(5). Examples of such evidence include, but are not limited to: records from law enforcement authorities, rape crises centers, mental health counseling centers, hospitals, or physicians; tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy. Evidence of behavioral changes following the claimed assault is one type of relevant evidence that may be found in these alternate sources. Examples of behavioral changes that may constitute credible evidence of a stressor include, but are not limited to: request for transfer to another military duty assignment; deterioration in work performance; substance abuse; episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavioral changes. 38 C.F.R. § 3.304(f)(5). In cases involving personal assault, the existence of a stressor in service does not have to be proven by the "preponderance of the evidence" because this would be inconsistent with the benefit of the doubt, or equipoise, doctrine contained in 38 U.S.C.A. § 5107(b). YR v. West, 11 Vet. App. 393, 399 (1998); Patton v. West, 12 Vet. App. 272, 279-80 (1999).

Additionally, under 38 C.F.R. § 3.304(f), VA can submit any evidence, including alternate source evidence, to a medical or mental health professional for interpretation. Bradford v. Nicholson, 20 Vet. App. 200 (2006). Most significantly, for claims involving an in-service personal assault, after-the-fact medical evidence can be used to establish a stressor. See id.; Patton, 12 Vet. App. at 278.

In this case, STRs do not reflect any complaints, treatments, or diagnoses of any psychiatric symptoms or disorders during active duty service. Rather, the January 1990 enlistment examination report for the Army National Guard reflects a normal psychiatric clinical evaluation; and the Veteran's denial of depression or excess worry, loss of memory or amnesia, and nervous trouble of any sort. The December 1992 Medical Evaluation Board examination report also reflects a normal psychiatric clinical evaluation; the Veteran's denial of depression or excess worry, loss of memory or amnesia, and nervous trouble of any sort; and that the Veteran's only medical issue was chronic back pain.

Personnel records reflect that the Veteran was stationed in Germany from May 1991 to April 1992.

Private treatment records from July to September 2009 reflect that the Veteran was attacked by a male psychiatric patient and was choked almost to the point of unconsciousness. He reported pain, loss of libido, depressed mood, nightmares, heart pounding when thinking about the incident, anhedonia, significant social withdrawal, and sleep problems. Contradictory to other evidence, the private psychologist noted that the Veteran had combat experience resulting in no residual psychiatric problems. He was diagnosed with PTSD due to an on-the-job injury, and was permitted to continue his job and work the same shifts as usual although he required breaks for 10 minutes every 90 minutes. In September 2009, the psychologist noted some concerns, such as continued nightmares, visual hallucinations, and paranoia.

In an October 2009 statement, the Veteran reported symptoms to include problems sleeping, delusions, nervousness, loss of appetite, sexual dysfunction, depression, forgetfulness, and limited self-control.

In a November 2009 statement in support of his PTSD claim, the Veteran reported the January 2009 attack by a patient at work as a stressor.

VA treatment records from May 2012 to October 2014 reflect that the Veteran met with a private psychiatrist every three months, was taking medications as advised, and had PTSD-related issues. In August 2012, the Veteran shared that something happened during service about which he never told anyone but was bothering him recently. Specifically, he stated that he was sexually assaulted at a bar while stationed in Germany. In September 2012, he reported that he was having problems dealing with an incident of MST, which occurred while stationed in Germany. He stated that he went to a club when he first arrived in Germany where his drink was "spiked;" that he woke up at an apartment complex not far from base unclothed and with his "backside hurting;" and that there were three or four men speaking in German or Turkish who were laughing. He stated that he did not report this incident, but began having disciplinary problems. He stated that since the MST, he became easily angered and upset, had difficulty trusting others, had difficulty with people standing behind him, and was anxious when he was startled by someone moving towards him quickly. He stated that his marriage was "rocky" due to his lack of trust, as well as his negative attitude. He also noted that he had discomfort in engaging in sexual intimacy as he could not stop thinking about "allowing the same sex to get on me." He also noted that he was physically assaulted by a patient in January 2009 and that his attitude towards patients worsened as he did not like patients to stand behind him and that he did not like co-workers to stand close to him. The Veteran was referred to a patient care technician due to his report of a history of MST while stationed in Germany. The diagnostic impression was of chronic PTSD. The Veteran endorsed the full range of PTSD symptoms secondary to an incident of MST while stationed in Germany.

An April 2015 formal finding regarding the lack of information needed to corroborate a contended stressor associated with a claim for PTSD reflects that the AMC determined that the Veteran's contention of in-service MST could not be corroborated, specifically that the evidence failed to confirm or identify any markers to corroborate the Veteran's contention. After a thorough review of the Veteran's personnel records and STRs, the AMC found no markers of personal performance decline or disciplinary actions taken towards the Veteran during service. To the contrary, he received a Certificate of Achievement in March 1992 for dedicated service during redeployment and a Good Conduct Medal for the period of service from May 1991 to May 1993 for "exemplary behavior, efficiency, and fidelity in active federal military service." It was also noted that the Veteran did not return a completed VA Form 21-0781a. As such, it was determined that the Veteran's contention of in-service MST could not be corroborated or conceded at that time.

In June 2016, the Veteran was provided VA examinations for PTSD and for other mental disorders. However, the only diagnosis was PTSD. The Veteran reported that he was never deployed for Operation Desert Storm and had no combat experience, but that he spent several months in Germany. He stated that when he was in Germany, he wanted to fit in, so he went to a bar and drank and talked with others there. He did not remember what happened, but ended up in an apartment complex without his clothes on and with a sore and raw "backside." He stated that he "knew that he had been raped and [felt] that his drink must have been spiked with something." He stated that everyone was gone when he woke up, but the VA examiner noted that he had previously reported in September 2012 that there were three or four men speaking German or Turkish laughing at him. Regardless, he did not report the incident. Subsequently, the Veteran stated that he requested a room alone, which was granted and allowed him to stay to himself and shower alone. The Veteran reported that he became nervous and wary, and had some depression. He stated that he had anxiety attacks when he was seen by male doctors and had difficulty using public restrooms and often waited until everyone left and locked the door. The examiner noted that the Veteran was diagnosed with PTSD by a community mental health profession after a work incident where a patient got behind him and choked him. However, the Veteran stated that he did not disclose the MST because the therapist was male and that it was too humiliating to disclose it to another male. He noted nightmares about his assault in Germany, but not about the work incident.

The VA examiner diagnosed the Veteran with PTSD attributable to his in-service MST in Germany. She opined that it was at least as likely as not that the Veteran's PTSD was incurred in or caused by the in-service MST while in Germany, although not reported. The examiner stated that the fact that the Veteran did not report the assault or have himself physically examined did not make his assertions any less credible. In fact, she cited that some sources noted that up to about 95 percent of male survivors of sexual assault did not report such assault due to guilt about not being able to protect themselves, feeling as thought their manliness was in question, feeling inadequate, or just simply because they felt they would not be believed or would be ridiculed. She stated that they often pulled back from their relationships following an assault and developed sexual difficulties. She noted that the Veteran's first marriage began and ended after his tour in Germany due to difficulties with mood, intimacy, and trust. She also noted that some men became more aggressive and argued with friends, family members, coworkers, or even strangers. In this case, she stated that the Veteran could not keep a job due to his inability to get along with others. She also referred to the general fact sheet on MST put out by VA, which stated that "some of the experiences both female and male survivors of MST may have include: strong emotions, intense emotional reactions, feeling angry or irritable all the time, feelings of numbness, trouble sleeping," all of which the Veteran exhibited. Additionally, he could not be in closed spaces, such as elevators, offices, and vehicles, with other men; was very protective over his two young sons; and communicated with his remaining male friends over the telephone as he could not bring himself to be around them. She noted that it would be mere speculation to state that the Veteran's PTSD was permanently aggravated by his low back disability, to include pain and medication, especially as there was no mention of pain being a factor in the Veteran's PTSD difficulties on interview or in his records.

As an initial matter, the Board finds that the evidence substantiates a current diagnosis of PTSD. As such, the requirement for a current disability is satisfied.

Additionally, the Veteran first noted the in-service MST in August 2012, which he stated he had not discussed with anyone but was beginning to bother him. During the course of mental health treatment, the Veteran contended that he consumed a "spiked" drink at a club when he first arrived in Germany, and woke up at an apartment complex unclothed with his "backside" hurting. He admitted that he did not report this incident, but became easily angered and upset, had difficulty trusting others, and had difficulty with people standing behind him or moving towards him quickly. He reported that his marriage was "rocky" due to his lack of trust and negative attitude, and that the MST caused discomfort in engaging in sexual intimacy. At his June 2016 VA examination, the Veteran reported that he became nervous and wary and had some depression after the MST, and that he subsequently requested a room to himself. As such, the Veteran's statements during the course of treatment and at his June 2016 VA examination reflect subsequent changes in behavior.

The Board notes that the Veteran first reported the January 2009 workplace assault by a psychiatric patient as the stressor that caused his PTSD, and that it was not until later during the course of treatment that his MST came up. However, the Veteran explained at the June 2016 VA examination that he did not disclose the MST to the therapist at the time of his workplace assault in January 2009 because the therapist was male and that it was too humiliating to disclose the MST to another male. He also noted that he had anxiety attacks when he was seen by male doctors. As such, the Board finds that the Veteran sufficiently addresses any inconsistencies in his reported stressors.

Additionally, the Board acknowledges the April 2015 VA formal finding regarding the lack of information needed to corroborate the claimed MST. The AMC specifically noted the absence of any markers confirming or corroborating the Veteran's contention of the MST. However, the June 2016 VA examiner opined that it was at least as likely as not that the Veteran's PTSD was incurred in or caused by the in-service MST while in Germany, although it was not reported. She explained that the fact that the Veteran did not report the assault or have himself physically examined did not impact the credibility of his assertions. Rather, she referred to studies showing that up to 95 percent of male survivors of sexual assault did not report such for various reasons and often pulled back from relationships. She noted that the Veteran's first marriage began and ended after his tour in Germany due to his problems with mood, intimacy, and trust. She also stated that the Veteran had difficulty getting along with others, and exhibited strong emotions, intense emotional reactions, feelings of anger or irritability all the time, feelings of numbness, and trouble sleeping. Additionally, he could not be in closed spaces with other men, was very protective over his two young sons, and communicated with his remaining male friends over the telephone rather than meet with them in-person. Accordingly, while the Veteran's personnel records do not reflect any change in performance or disciplinary actions which corroborate the MST, the Board finds that the Veteran's statements, as well as VA treatment records and the June 2016 VA examination report, sufficiently corroborate his contentions of MST.

Furthermore, the VA treatment records reflect that the Veteran endorsed the full range of PTSD symptoms secondary to an incident of MST while stationed in Germany. Additionally, the June 2016 VA examiner provided a positive opinion that the Veteran's PTSD was caused by the in-service MST while in Germany. There is no competent evidence contradicting this opinion. As such, the Board finds that the weight of the evidence demonstrates that the Veteran's current PTSD is caused by his in-service MST.

In consideration of the foregoing, and resolving reasonable doubt in favor of the Veteran, the Board finds that the criteria for service connection for PTSD have been met. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53-56.


ORDER

Service connection for hypertension as secondary (by way of aggravation) to the service-connected low back disability, is granted.

Service connection for PTSD is granted.


REMAND

Remand of the TDIU issue is necessary as the AOJ's implementation of the Board's decision may impact the decision on the issue of entitlement to a TDIU. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (the adjudication of claims that are inextricably intertwined is based upon the recognition that claims related to each other should not be subject to piecemeal decision-making or appellate litigation).

Additionally, in an October 2016 VA back examination report, the Veteran noted that he was employed full-time but only worked part-time hours due to his back problems. However, at his November 2016 VA back examination, the Veteran stated that he was currently unemployed. As such, it appears that a VA Form 21-8940 should be mailed to the Veteran to be completed and returned.




Accordingly, the case is REMANDED for the following action:

1. Mail the Veteran a VA Form 21-8940 to be completed and submitted in order to obtain his updated employment information.

2. After implementation by the AOJ of the Board's decision herein and any further evidentiary development deemed necessary, readjudicate the issue of a TDIU. If the benefit sought remains denied, provide an additional SSOC to the Veteran, and return the appeal to the Board.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
S. B. MAYS
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs