# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 15-2585

JACLYN R. MOLITOR, APPELLANT,

V.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued March 30, 2017                                                    June 1, 2017)

*Livhuwani Ndou*, with whom *Glenn R. Bergmann*, both of Bethesda, Maryland, were on the brief for the appellant.

*Shereen M. Marcus*, with whom *Leigh A. Bradley*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; and *Christopher W. Wallace*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before DAVIS, *Chief Judge*, and BARTLEY and GREENBERG, *Judges*.

BARTLEY, *Judge*: Veteran Jaclyn R. Molitor appeals through counsel a May 12, 2015, Board of Veterans' Appeals (Board) decision denying service connection for a psychiatric disability, to include post-traumatic stress disorder (PTSD). Record (R.) at 2-18. This matter was referred to a panel of the Court, with oral argument, to address the circumstances under which the duty to assist requires VA, in a claim for service connection for a psychiatric disorder, to attempt to obtain records of servicemembers other than the claimant to aid in corroborating a claimed personal assault. The Court holds that, in accordance with VA General Counsel Precedent Opinion 05-14[1] (G.C. Precedent Opinion 05-14 or the G.C. opinion), when a claimant adequately identifies relevant records of fellow servicemembers that may aid in corroborating a claimed personal assault, the duty to assist requires VA to attempt to obtain such records or, at a minimum, to notify the claimant why it will not undertake such efforts. Because the Board did not do so here, the Court will set aside the May 12, 2015, Board decision and remand the matter for further development, if necessary, and readjudication consistent with this decision.

---

[1] The General Counsel issued this opinion on August 12, 2014, and amended it, during this appeal, on January 5, 2017.

# I. FACTS

Ms. Molitor served on active duty in the U.S. Army from November 1985 to January 1987, when she was released from active duty due to pregnancy. R. at 2881. She was a military police officer (MP), serving in Germany from April 1986 to January 1987. R. at 2881-82.

In December 2003, Ms. Molitor filed a claim for service connection for PTSD due to military sexual trauma (MST). R. at 3508-09. She underwent a VA PTSD examination in June 2004 and the examiner noted that prior psychiatric records reflected reports of being sexually abused as a child and severe depression since a work-related back injury in 1990. R. at 3222-26. Ms. Molitor complained of poor memory for dates and sequences and was deemed to be a poor historian. R. at 3222-23. She laughed and did not exhibit distress when describing in-service stressors—including repeatedly being propositioned for sex, being flashed by a fellow MP, and having her breasts grabbed by another MP—and denied being pressured or coerced into sexual activity against her will. R. at 3228-29. Following a mental status examination and diagnostic testing, the results of which the examiner described as containing "a slight suggestion of exaggeration, possibly as a plea for help," the examiner diagnosed PTSD due to childhood trauma, probable dissociative identity disorder, recurrent major depressive disorder, borderline personality disorder, and alcohol/drug dependence in remission. R. at 3252.

A VA regional office (RO) denied service connection for PTSD in June 2004 and May 2005, R. at 3159-61, 3217-20, and the veteran timely disagreed with those decisions, R. at 3908.

In the meantime, Ms. Molitor indicated on a November 2004 Vet Center intake form that she was sexually assaulted in service during an MP initiation/hazing ceremony and did not report the incident because of fear of retribution from her assailants. R. at 170. In a March 2005 letter, her Vet Center counselor, Cindy Macaulay, explained that the veteran had repressed memories of the in-service sexual assault and those memories, though "fragmented and incomplete," were returning with counseling. R. at 3211. Ms. Macaulay also stated that it was understandable that the veteran had not reported the incident because the alleged assailants were MPs. *Id.* In an October 2005 letter, Ms. Macaulay acknowledged that the veteran's other psychiatric diagnoses, history of childhood sexual abuse, and post-service life events complicated the case, but opined that Ms. Molitor's recent reporting of the in-service assault was "normal" and did not diminish the veracity of that report. R. at 3148. Ms. Macaulay indicated that the veteran was truly fearful of

2

retaliation from the assailants and opined that it was as likely as not that the veteran's PTSD was related to service. *Id*. Attached to that letter was a sexual trauma markers worksheet, which included the approximate date of the claimed assault ("Around February of 1986"), the location ("Frankfurt, Germany[,] Gibbs Kasem"), her unit ("284th MP Company, 5th Battalion"), and the names of several witnesses ("Private Babb[,] Lt. Nelson[,] Private Jones (a female)[,] and Lt. Horvath (female)"). R. at 3149.

In November 2005, Ms. Molitor submitted a statement to VA in which she provided further details of the assault. R. at 3145-46. She stated that she was raped at gunpoint by at least five MPs during training and that she managed to fight back and injure a sergeant during the attack. R. at 3146. She explained that she did not report the rape because she was afraid of retaliation and that, until recently, she repressed memories of the incident. *Id*.

Later that month, the RO issued a Statement of the Case (SOC) continuing to deny the claim, R. at 3126-44, and Ms. Molitor perfected an appeal to the Board. She subsequently submitted another statement in which she asserted that, sometime after the MP initiation incident, she was raped by three MPs in the shower. R. at 3034.

At a September 2006 Board hearing, Ms. Molitor testified that she was sexually assaulted by four or five soldiers during an MP initiation in Germany. R. at 2956. She indicated that she "beat the hell out of the sergeant" in the group and was warned that she would be killed if she reported the incident. *Id*. Ms. Macaulay testified that the veteran's memories of the assaults "came clear in bits," that her behavior during treatment and evaluation was a means of coping with the childhood and in-service assaults, and that her symptoms of silence, repressed memories, dissociation, multiple personalities, and acting out were consistent with those assaults. R. at 2959-60.

In July 2007, the Board ordered the first of several remands for further development. R. at 2871-76. While VA was conducting that development, Ms. Macaulay submitted a January 2010 letter in which she explained that the veteran had been hospitalized numerous times over the years and had been given medication and electroconvulsive therapy that "could certainly lead to confusion, memory problems, and being a poor historian and advocate for herself." R. at 379. The next month, Ms. Molitor underwent a VA PTSD examination and the examiner stated that the veteran's denial at entrance to service of prior drug and alcohol use and mental illness, despite evidence of such in the record, called her credibility into question. R. at 392. The examiner

3

reviewed the claims file for evidence of behavior changes and noted that there was no record of in-service counseling, discipline issues, or decrease in work performance; she therefore concluded that it was less likely than not that the veteran exhibited any change in behavior in service or shortly thereafter that would be indicative of an in-service assault. R. at 392-94.

Later in February 2010, the RO issued a Supplemental SOC (SSOC) continuing to deny service connection for PTSD, R. at 381-90, and, in June 2011, the Board remanded the claim once more for additional development, R. at 352-59.

In April 2012, the VA Appeals Management Center (AMC) issued a formal finding that the claimed in-service assaults could not be verified based on the information provided by the veteran. R. at 309-11. The AMC noted that Ms. Molitor had alleged that the assault occurred in Germany in February 1986, but she was not deployed there until April 1986, and that a review of her service personnel and medical records did not reveal markers for sexual assault. R. at 310-11.

An August 2012 Vet Center record indicates that Ms. Molitor had "cut way back on her meds" and was now remembering relevant events that happened while she was in the military. R. at 140. Two months later, she submitted a statement to VA describing claimed in-service assaults in more detail. R. at 287. Specifically, she stated that another MP, Specialist Simms, led her to the MP training area, where she saw Lieutenants Nelson and Horvath hiding in the bushes behind five or six soldiers, including "Sgt. Thomas or Sgt. Thompson" and Private Babbs. *Id*. She indicated that the soldiers undressed her and raped her and she fought back and injured the sergeant. *Id*. Ms. Molitor also asserted that she was raped again in the shower several months later, also in Germany, by three men she did not know. *Id*. She indicated that she did not report either incident because she feared for her safety. *Id*. Finally, the veteran reported that she met a new female MP in Germany in 1986, Private Lutz, who had a look in her eyes that made Ms. Molitor believe that Private Lutz had also been raped. *Id*. Ms. Molitor indicated that Private Lutz committed suicide in service and asked VA to check her file, as well as the files of three other women she served with in Germany (Privates Angel, Jones, and Wenzel), for evidence of sexual assault or claims for residuals of MST. *Id*.

The Board remanded the claim again in December 2012, this time to provide Ms. Molitor with another hearing. R. at 268-72. The ordered hearing was conducted in April 2013, and Ms. Molitor's service organization representative argued that the discharge for pregnancy was a marker of sexual assault because "the military can accommodate a pregnancy." R. at 4254. Ms. Molitor

4

described the initiation rape incident again and stated that without explanation she was transferred to another squadron shortly afterward. R. at 4257-60. She stated that she asked for her release from service after Private Lutz killed herself. R. at 4268. She also indicated that she had a "bad vertebra" that she had "no doubt" was related to the in-service shower rape. R. at 4271. Ms. Macaulay testified that she believed that Ms. Molitor had been raped in service because of her detailed accounts of the incident and her consistency in reporting those details during counseling. R. at 4275. Ms. Macaulay explained that the inconsistencies that VA perceived in the veteran's reports were the result of her "uncover[ing] more and more" details, rather than changing her story. R. at 4276. Ms. Macaulay further testified that, in her professional judgment, the veteran's presentation was consistent with the incidents she described. R. at 4281. After the hearing, Ms. Molitor submitted a sexual trauma markers worksheet that described the initiation and shower assaults. R. at 254-57.

During May 2013 counseling, the veteran told Ms. Macaulay that she "lied to [a VA psychologist] about 'everything' and is not sure why she does this." R. at 131. Later that month, she told Ms. Macaulay that one of her personalities, Jake, sabotaged her recent Board hearing. *Id*.

In August 2013, the Board remanded the claim for another VA examination, R. at 207-14, which took place in January 2014, R. at 106-13. The examiner found Ms. Molitor not credible because her report of MST was "dramatic and inconsistent with what she has reported to other providers," was "based on her own idea of what the 'pieces' of her memories might mean," and appeared to be "an unlikely series of events." R. at 106. The examiner diagnosed borderline personality disorder, but no other mental disorders. R. at 106-07. Later that month, the RO issued an SSOC continuing to deny the claim. R. at 99-104.

In June 2014, the Board found the January 2014 VA examination inadequate and remanded to obtain another examination. R. at 83-92. Ms. Molitor underwent the ordered examination the following month, and the examiner stated that it was not possible to conduct a reliable diagnostic assessment because of "significant over-reporting of [] actual psychological symptoms." R. at 66. The examiner also found the veteran not credible because objective testing reflected over-reporting of symptoms, her mental health history "raise[d] skepticism," and she had inconsistently reported MST details over the years. *Id*. As a result, he did not diagnose any mental disorder. *Id*.

In December 2014, the Board sought a medical expert opinion to resolve the conflicting diagnoses, R. at 47-50, which was provided by a VA psychologist in January 2015. R. at 31-41.

The VA psychologist reviewed the claims file and determined that the record supported current diagnoses only of borderline personality disorder and PTSD based on childhood stressors. R. at 31-37. She opined that both conditions preexisted service and were not aggravated or otherwise related to claimed in-service stressors. R. at 37-38. She indicated agreement with the June 2004 VA examiner and noted no evidence of behavior changes in service or shortly thereafter. R. at 38-39. She also described Ms. Macaulay's treatment notes as "extremely cursory and incomplete" and rejected her diagnosis of PTSD based on MST as not supported by the record. R. at 39-40.

In May 2015, the Board issued the decision currently on appeal, which denied service connection for an acquired psychiatric disorder to include PTSD. R. at 3-21. As relevant here, the Board found that VA had complied with its duties to notify and assist, but did not discuss the veteran's request for efforts to attempt to obtain records from fellow servicemembers. R. at 5-7. Regarding the merits, the Board determined that the record lacked evidence of behavior changes in service or shortly thereafter that may indicate MST. R. at 17-18. The Board also deemed the veteran's statements regarding the in-service sexual assaults not credible because they were internally inconsistent and contradicted by other evidence of record, she inconsistently reported the circumstances of a low back injury, and various VA examiners had found her to be unreliable and to exaggerate symptoms. R. at 18-20. The Board discounted the Vet Center counselor's opinions because they were based on those non-credible statements, there was no indication that the counselor reviewed the claims file, she did not provide adequate rationale for her conclusions, and the VA examiners agreed that the Vet Center counselor's observations were not supported by the evidence of record. R. at 20-21. The Board instead accorded great probative weight to the negative VA examiners' opinions, which concluded that the veteran did not have PTSD or any other psychiatric disorder related to service. *Id.* This appeal followed.

## II. ANALYSIS

### A. The Parties' Arguments

Ms. Molitor argues, inter alia, that the Board provided inadequate reasons or bases for finding that VA satisfied its duty to assist because VA did not attempt to obtain records from other servicemembers she specifically identified, including one of her alleged assailants, that may aid in corroborating the claimed in-service assaults. Appellant's Brief (Br.). at 17-22. She asserts that remand is warranted because G.C. Precedent Opinion 05-14 required VA to attempt to obtain those

6

records or, at a minimum, required the Board to explain why VA did not undertake such efforts. *Id*. at 19-22.

The Secretary responds that VA was not obligated to attempt to obtain such records, and the Board was therefore not required to discuss the G.C. opinion, because Ms. Molitor did not adequately identify relevant records from fellow servicemembers that may aid in corroborating the claimed assaults. Secretary's Br. at 24-27. The Secretary further argues that, notwithstanding that lack of adequate identification, the G.C. opinion makes clear that VA would have been statutorily prohibited from obtaining and disclosing the requested records without written consent from the affected servicemembers or a court order and that any further VA efforts in that regard would have been unreasonable given the nature of the veteran's request and the fact that she did not report the assaults during service. *Id*. at 27-29.

Ms. Molitor counters that the Board, not the Secretary, was required to assesses whether "reasonable efforts" to assist her included seeking written consent from the witnesses and assailant she identified and that the Secretary's argument that the duty to assist did not mandate such development amounts to impermissible post hoc rationalization. Reply Br. at 2-5.

At oral argument, the Secretary additionally argued that "there is an 'umbrella of credibility' that hangs over all of the prongs of the duty to assist" and that the Board, in finding the veteran not credible, adequately explained why no further assistance was provided in this case. Oral Argument at 30:31-50, 32:20-55.

For the reasons that follow, the Court agrees with Ms. Molitor that the Board provided inadequate reasons or bases for finding that VA satisfied its duty to assist in this case.

### B. The Duty to Assist in Claims for Service Connection for PTSD Based on In-Service Personal Assault

This case involves the VA General Counsel's interpretation of intertwining and sometimes conflicting federal statutes and regulations regarding VA's concomitant duties to assist claimants in developing their claims and to protect the privacy of all servicemembers' records. Before addressing the privacy issue, as set forth in G.C. Precedent Opinion 05-14, it is necessary to understand VA's unique legal framework for developing and adjudicating claims for service connection for PTSD based on in-service personal assault.

Generally, a veteran is entitled to service connection for PTSD when the record before the Secretary contains (1) a current medical diagnosis of PTSD, (2) credible supporting evidence that the claimed in-service stressor actually occurred, and (3) medical evidence establishing a link

7

between the claimed in-service stressor and the current symptoms of PTSD. *See Cohen v. Brown*, 10 Vet.App. 128, 138 (1997); 38 C.F.R. § 3.304(f) (2016). However, claims for service connection for PTSD based on an in-service personal assault are governed by § 3.304(f)(5), which lowers the evidentiary burden for corroborating the occurrence of an in-service personal assault stressor. *See Post-Traumatic Stress Disorder Claims Based on Personal Assault*, 65 Fed.Reg. 61,132, 61,132 (Proposed Rule Oct. 16, 2000) (recognizing that veterans seeking service connection for PTSD based on personal assault "may find it difficult to produce evidence to prove the occurrence of this type of stressor" because "[m]any incidents of in-service personal assault are not officially reported"); *see also AZ v. Shinseki*, 731 F.3d 1303, 1312-15 (Fed. Cir. 2013) (summarizing evidence of the underreporting of personal assaults in the military). That section of the regulation provides:

> If a [PTSD] claim is based on in-service personal assault, evidence from sources other than the veteran's service records may corroborate the veteran's account of the stressor incident. Examples of such evidence include, but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy. Evidence of behavior changes following the claimed assault is one type of relevant evidence that may be found in these sources. Examples of behavior changes that may constitute credible evidence of the stressor include, but are not limited to: a request for a transfer to another military duty assignment; deterioration in work performance; substance abuse; episodes of depression, panic attacks, or anxiety without an identifiable cause; or unexplained economic or social behavior changes. VA will not deny a [PTSD] claim that is based on in-service personal assault without first advising the claimant that evidence from sources other than the veteran's service records or evidence of behavior changes may constitute credible supporting evidence of the stressor and allowing him or her the opportunity to furnish this type of evidence or advise VA of potential sources of such evidence. VA may submit any evidence that it receives to an appropriate medical or mental health professional for an opinion as to whether it indicates that a personal assault occurred.

38 C.F.R. § 3.304(f)(5). With the enactment of § 3.304(f)(5) (originally § 3.304(f)(3)), "VA codified its existing internal policies that provided for additional development assistance in claims for PTSD based on personal assault," *Gallegos v. Peake*, 22 Vet.App. 329, 335 (2008), including "a special obligation to assist a claimant . . . in producing corroborating evidence of an in-service stressor," *Patton v. West*, 12 Vet.App. 272, 280 (1999).

Of course, VA is also bound in such cases by the general parameters of the duty to assist. *See* 38 U.S.C. § 5103A(a)(1). For disability compensation claims, including claims for service

8

connection for PTSD, the duty to assist includes making reasonable efforts to obtain relevant records from VA or other Federal departments or agencies that have been adequately identified by the claimant. 38 U.S.C. § 5103A(c)(1); 38 C.F.R. § 3.159(c)(2)-(3) (2016). These records may include, inter alia, non-military records and military and VA medical records. 38 U.S.C. § 5103A(c)(1); 38 C.F.R. § 3.159(c)(2)-(3). The duty to assist is not triggered if the claimant does not adequately identify outstanding records or identifies records that are not relevant to the claim, or if VA concludes that it would not be reasonable to attempt to obtain the identified records. *See, e.g.*, *Golz v. Shinseki*, 590 F.3d 1317, 1321 (Fed. Cir. 2010) ("There can be no doubt that Congress intended VA to assist veterans in obtaining records for compensation claims, but it is equally clear that Congress only obligated the VA to obtain 'relevant' records."); *McGee v. Peake*, 511 F.3d 1352, 1357 (Fed. Cir. 2008) ("Congress has explicitly defined the VA's duty to assist a veteran with the factual development of a benefit claim in terms of relevance."); *Loving v. Nicholson*, 19 Vet.App. 96, 103 (2005) (explaining that section 5103A "require[s] that the claimant adequately identify relevant records that the claimant wishes the Secretary to obtain"); *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992) ("In connection with the search for documents, th[e] duty [to assist] is limited to specifically identified documents that by their description would be facially relevant and material to the claim.").

Once the duty to assist is triggered, "VA will make as many requests as are necessary to obtain relevant records from a Federal department or agency." 38 C.F.R. § 3.159(c)(2). VA must continue its efforts to attempt to obtain such records unless "it is reasonably certain that such records do not exist," 38 U.S.C. § 5103A(c)(2); it is reasonably certain that "further efforts to obtain those records would be futile," *id.*; or there is "no reasonable possibility" that any further VA assistance would aid in substantiating the claim, 38 C.F.R. § 3.159(d). *See also* 38 C.F.R. § 3.159(c)(2) ("Cases in which VA may conclude that no further efforts are required include those in which the Federal department or agency advises VA that the requested records do not exist or the custodian does not have them."). The latter situation—no reasonable possibility that any further assistance would aid in substantiating the claim— includes, but is not limited to, "[c]laims that are inherently incredible or clearly lack merit." 38 C.F.R. § 3.159(d)(2). If VA is unable to obtain records from a Federal department or agency after making reasonable efforts to do so, VA must notify the claimant of that fact. 38 C.F.R. § 3.159(e)(1).

9

The Court reviews Board determinations that VA satisfied its duty to assist under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Nolen v. Gober*, 14 Vet.App. 183, 184 (2000). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

As with any finding on a material issue of fact and law presented on the record, the Board must support its determination that VA satisfied its duty to assist with an adequate statement of reasons or bases that enables the claimant to understand the precise basis for that finding and facilitates review in this Court. 38 U.S.C. § 7104(d)(1); *Todd v. McDonald*, 27 Vet.App. 79, 87 (2014); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of evidence, account for evidence it finds persuasive or unpersuasive, and provide reasons for rejecting material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). The Board must also address all potentially applicable provisions of law and regulation. 38 U.S.C. § 7104(a); *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991).

## C.  G.C. Precedent Opinion 05-14

Having set forth the overarching duty-to-assist principles that govern VA's development of claims for service connection for PTSD based on in-service personal assault, the Court now turns its attention to G.C. Precedent Opinion 05-14. Except as otherwise noted, we express no opinion as to the propriety of the General Counsel's conclusions. Rather, the following is a summary of the G.C. opinion, which both parties agree is potentially applicable to the veteran's claim. *See* Appellant's Br. at 19-21; Secretary's Br. at 27-28; Reply Br. at 4-5.

In G.C. Precedent Opinion 05-14, the VA General Counsel addressed whether the duty to assist requires VA to obtain records from servicemembers other than the claimant, including third party records that may aid in corroborating an alleged personal assault in a claim for service connection for PTSD under § 3.304(f)(5). VA Gen. Coun. Prec. Op. 05-14 (Jan. 5, 2017), at 1, ¶¶ 1-2. The General Counsel concluded that "VA generally would be obligated under 38 U.S.C. § 5103A to make reasonable efforts to obtain records pertaining to another individual if: (a) those records were adequately identified, would be relevant to the [v]eteran's claim, and would aid in

10

substantiating the claim; and (b) VA would be authorized to disclose the relevant portions of such records to the [v]eteran under the Privacy Act and 38 U.S.C. §§ 5701 and 7332."[2]  *Id*., at 2, ¶ 1.

As to element (a), the General Counsel recognized that "[t]he service records of an individual other than the claimant may be relevant to the claim in certain situations," and favorably cited a non-precedential case, *Durham v. Shinseki*, No. 08-3478, 2010 WL 2145263, 2010 U.S. App. Vet. Claims LEXIS 998 (Vet.App. May 28, 2010) (Davis, J.), in which the Court remanded a claim for service connection for PTSD based on an in-service personal assault because VA had not attempted to obtain the alleged assailant's service records, which the claimant asserted contained records of a military investigation into the assault.  *Id*. at 5, ¶ 2.  The General Counsel explained that the question of whether another servicemember's records would be relevant to a claim was "inherently a case-specific factual determination."  *Id*.

As to element (b), the General Counsel indicated that, "[i]f VA is precluded from disclosing another individual's records to the claimant, then it would be precluded from considering those records in deciding the claim," *id*. at 7, ¶ 5, and examined three different statutes that potentially limit VA's disclosure of such records: the Privacy Act, 5 U.S.C. § 552a(b); 38 U.S.C. § 5701; and 38 U.S.C. § 7332.  Specifically, the General Counsel noted that the Privacy Act provides, in pertinent part, that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," or unless disclosure would be permitted under an enumerated exception to the Act.  5 U.S.C. § 552a(b); *see* G.C. Prec. 05-14, at 6, ¶ 4.  The General Counsel highlighted three exceptions that were potentially applicable to VA claims: written consent from the third party to disclose his or her records, 5 U.S.C. § 552a(b); an order from a court of competent jurisdiction directing disclosure, 5 U.S.C. § 552a(b)(11); or disclosure for a "routine use" compatible with the purpose for which the record was collected, 5 U.S.C. § 552a(b)(3).  G.C. Prec. 05-14, at 8, ¶ 8.

Regarding the VA specific statutes, sections 5701 and 7332, the General Counsel concluded that, although section 5701(a) provides that "[a]ll files, records, reports, and other papers and documents pertaining to any claim under any of the laws administered by the Secretary

---

[2] Although the General Counsel discusses only these listed statutes, the Court observes that there may be other privacy statutes, such as the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26, 29, and 42 U.S.C.), that limit or prevent disclosure of another veteran's *medical* records.

and the names and addresses of present or former members of the Armed Forces, and their dependents, in the possession of the Department shall be confidential and privileged, and no disclosure thereof shall be made except as provided in this section," the section 5701 provisions authorizing disclosure aligned with the aforementioned Privacy Act exceptions and would therefore permit disclosure via written consent, 38 U.S.C. § 5701(b)(1); a court order, 38 U.S.C. §§ 5701(b)(2), (5); or a routine use by VA, 38 U.S.C. § 5701(e). G.C. Prec. 05-14, at 8-9, ¶¶ 10-11. However, he explained that, because VA had not yet established a routine use for disclosing third party records in VA custody, the routine use exception does not apply to VA records. *Id*. at 8, ¶ 8 (citing 74 Fed.Reg. 29,275, 29,277-81 (June 19, 2009) (listing routine uses for VA records). The General Counsel further noted that 38 U.S.C. § 7332(a)(1) prohibits disclosure of any record pertaining to "the identity, diagnosis, prognosis, or treatment of any patient or subject which are maintained in connection with the performance of any [VA] program or activity . . . relating to drug abuse, alcoholism or alcohol abuse, infection with the human immunodeficiency virus [(HIV)], or sickle cell anemia," absent the individual's written consent or a court order directing disclosure.[3] *See* G.C. Prec. 05-14, at 9-10, ¶ 12 (citing 38 U.S.C. §§ 7332(b)(1), (2)(D); 38 C.F.R. § 1.475).

The General Counsel therefore concluded that, where section 7332 is not implicated because records do not involve drug abuse, alcoholism or alcohol abuse, HIV, or sickle cell anemia, VA would be permitted to disclose another servicemember's VA records to a claimant upon written consent of the individual to whom the records pertain or pursuant to a court order. G.C. Prec. 05-14, at 10, ¶ 13. Similarly, where section 7332 is not implicated, VA would be permitted to disclose another servicemember's records in the custody of another Federal agency or department to the claimant upon written consent of the individual to whom the records pertain, pursuant to a court order, or where the other agency or department has an established routine use permitting disclosure. *Id*. at 10, ¶ 14.

Regarding written consent, the General Counsel stated that "reasonable efforts" to assist a claimant in obtaining records may include VA asking another servicemember to consent to disclosure of his or her records to the claimant. *Id*. at 11, ¶ 15. He explained that the determination

---

[3] Effective April 24, 2017, VA amended its regulations governing the release of VA medical records to eliminate the restrictions on sharing negative HIV and sickle cell anemia test results with veterans' non-VA medical providers. *See* Release of VA Records Relating to HIV, 82 Fed.Reg. 14,820 (Mar. 23, 2017).

as to whether the duty to assist requires such action is to be made on a case-by-case basis considering such factors as

> the third party's privacy interest in his or her records; the likelihood that the records exist; the likelihood that the request would result in consent to disclose the records to the claimant; and the potential for such requests to generate conflict or otherwise adversely affect the safety, health, or rights of either the claimant or the third party.

*Id.* He also stated that VA may consider "whether there is a basis for believing that records of the type referenced by the claimant exist, as distinguished from mere speculation that such records may exist." *Id.* According to the General Counsel,

> [a] determination that "reasonable efforts" do not require seeking a third party's consent to disclose his or her records to the claimant would be most strongly justified in a case where the interests of the third party are adverse to the claimant's interest, such as where the claimant alleges that the third party assaulted the claimant or engaged in other improper or unlawful behavior.

*Id.* at 11, ¶ 16. When VA finds that "reasonable efforts" would require seeking written consent from a third party, the General Counsel indicated that VA "must first obtain the claimant's informed written consent to disclose his or her information to the third party as needed in order to facilitate the third party's informed consent to the disclosure of his or her records to the claimant." *Id.* at 12, ¶ 17.

With respect to obtaining a court order directing disclosure, the General Counsel indicated that he believed that the duty to assist "generally would not require VA to institute court proceedings to secure authority for disclosure" because, even if VA had standing to initiate such proceedings,[4] "instituting a judicial proceeding collateral to a pending benefits claim would likely be beyond the scope of the 'reasonable efforts' contemplated by section 5103A(a)." *Id.* at 12, ¶ 18.

And, with respect to routine uses for disclosure of non-VA Federal records, the General Counsel stated that "it would be consistent with VA's duty to assist for VA to request that the other agency provide those records, but only if such records may be disclosed to the VA claimant." *Id.*

---

[4] Although the Court need not address this standing issue to decide the instant appeal, the Court notes that claimants and the Secretary have standing to seek Court intervention in proceedings before the Agency on issues that would ultimately be appealable to the Court. *See Cox v. West*, 149 F.3d 1360, 1363 (Fed. Cir. 1998) (holding that the Court "has the power to issue writs of mandamus in aid of its jurisdiction"); *see also Monk v. Shulkin*, __ F.3d __, __, 2017 WL 1487283, at *5, 2017 U.S. App. LEXIS 7329, at *13 (Fed. Cir. Apr. 26, 2017) (characterizing the All Writs Act as "a legislatively approved source of procedural instruments designed to achieve the rational ends of law," which "permits federal courts to fill gaps in their judicial power where those gaps would thwart the otherwise proper exercise of their jurisdiction," and explaining that this Court's authority under that Act is "is not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected" (internal quotations and citations omitted)).

at 10, ¶ 14. The General Counsel suggested that, for purposes of making such a request, "VA clearly explain to the custodian agency the circumstances and conditional nature of the request." *Id*.

Finally, the General Counsel concluded that neither section 5103A nor § 3.304(f)(5) requires VA to solicit written statements from fellow servicemembers, including an alleged assailant, for the purpose of assisting in corroborating a claimed personal assault stressor. *Id*. at 13-16, ¶¶ 20-24. However, the Court addressed the same question in *Forcier v. Nicholson*, 19 Vet. App. 414, 422 (2006), and held that, in a claim for service connection for PTSD based on an in-service personal assault, "[i]f . . . a claimant provides the name or names of any persons who allegedly perpetrated the assault or the names of any potential witnesses, the Secretary's reasonable efforts to assist, as required under section 5103A(a), may also include attempting to assist the claimant in obtaining statements from these persons." *Id*. (citing *Patton*, 12 Vet.App. at 280-81). Thus, to the extent that the General Counsel categorically concluded that the duty to assist never requires VA to solicit written statements from third parties to assist in corroborating a claimed stressor, he erred. *See Hornick v. Shinseki*, 24 Vet.App. 50, 53 (2010) (reviewing VA's interpretation of a statute de novo).

In sum, General Counsel Precedent Opinion 05-14 provides that the duty to assist requires VA, in a claim for service connection for PTSD based on in-service personal assault, to make reasonable efforts to obtain records from fellow servicemembers when those records are adequately identified by the claimant, relevant to the claim, would aid in substantiating the claim, and would be subject to disclosure under the Privacy Act and 38 U.S.C. §§ 5701 and 7332. VA G.C. Prec. 05-14, at 2, ¶ 1. Where the records do not involve drug abuse, alcoholism or alcohol abuse, HIV, or sickle cell anemia under section 7332, VA would be permitted to disclose third party VA records pursuant to written consent of the third party or a court order directing disclosure, and VA would be permitted to disclose third party records in the custody of another Federal agency or department pursuant to written consent of the third party, a court order directing disclosure, or a routine use of the other Federal agency or department permitting disclosure. *Id*. at 10, ¶¶ 13-14. Whether VA's "reasonable efforts" to assist include seeking written consent of the third party on behalf of the claimant is a factual question to be answered on a case-by-case basis, weighing the competing interests of the claimant and third party and considering the sensitive nature of the particular claim. *Id*. at 11, ¶¶ 15-16.

14

D.  Application to This Appeal

Although the Court is not bound by VA General Counsel precedent opinions, the Board is. 38 U.S.C. § 7104(c) ("The Board shall be bound in its decisions by the regulations of the Department, instructions of the Secretary, and the precedent opinions of the chief legal officer of the Department."); *see Hornick*, 24 Vet.App. at 52-53.  Consequently, if Ms. Molitor adequately identified relevant records from fellow servicemembers that may aid in corroborating her claimed in-service assaults, G.C. Precedent Opinion 05-14 would apply to her claim and the Board would have been required to address it in assessing whether VA satisfied the duty to assist.  *See* 38 U.S.C. § 7104(a); *Schafrath*, 1 Vet.App. at 593.  Accordingly, the Court will now examine whether Ms. Molitor's statements identifying an alleged assailant, witnesses to the MP initiation assault, and other female MPs who may have been raped in Germany were sufficient to raise the application of that G.C. opinion.

Over the course of the claim, Ms. Molitor identified several individuals whose service records she believes may aid in corroborating the claimed assaults.  In October 2005, she submitted a sexual trauma markers worksheet that included a description of the MP initiation rape, her unit information, the location and approximate date of the incident, and the names and ranks of four witnesses.  R. at 3149.  In October 2012, the veteran identified those four servicemembers again, provided the name and rank of another witness to the assault, and requested that VA attempt to locate those individuals.  R. at 287.  She also gave the name and rank of one of her alleged assailants and asserted that she physically retaliated against him, implying that he may have sustained injuries that could be reflected in his service medical records.  *Id*.; *see also* R. at 2956, 3146 (the veteran's other reports of "beating up" the sergeant-assailant).  Additionally, Ms. Molitor identified by name and rank four women stationed in Germany with her at the time, including another female MP who Ms. Molitor believed had also been raped in service and who allegedly committed suicide shortly after being deployed to Germany.  *Id*.  The veteran expressly requested that VA review their records for evidence of in-service sexual assault or claims for service connection for residuals of MST.  *Id*.

Collectively, this information was sufficient to facilitate a VA search for those servicemembers' records, and the Court therefore concludes that it constitutes adequate identification of outstanding records for duty to assist purposes.  *See Gagne v. McDonald*, 27 Vet.App. 397, 402-03 (2015) (concluding that the adequate identification prong of the duty to

assist was satisfied because the veteran provided VA with information sufficient to locate records pertaining to a claimed in-service stressor, including his unit, the circumstances of the claimed stressor, and a 13-month timeframe in which the stressor occurred).

The Court is likewise persuaded that the identified records were relevant to and may aid in substantiating the veteran's claim. The alleged assailant's service medical records may show complaints of or treatment for injuries inflicted by Ms. Molitor that would corroborate her account of the rape, *see* R. at 287, 2956, 3146; the service records and VA claims files of the identified women serving with her in Germany may reflect reports of similar assaults or claims for service connection for residuals of MST that could establish a rape culture at the base, *see* R. at 287; and service records that confirm Private Lutz's suicide would bolster the credibility of Ms. Molitor's reports of other events that occurred in Germany in 1986. *See* R. at 287, 4268. The Court therefore concludes that, for duty to assist purposes, the foregoing records are relevant and have a reasonable possibility of substantiating the veteran's claim because they relate to the claimed initiation rape and may aid in corroborating that stressor. *See Golz*, 590 F.3d at 1321.[5]

Given that Ms. Molitor adequately identified relevant records of fellow servicemembers that may aid in substantiating her claim, G.C. Precedent Opinion 05-14 was applicable to her claim and the Board was required to consider it in assessing whether VA satisfied its duty to assist. *See* 38 U.S.C. § 7104(a), (c); *Hornick*, 24 Vet.App. at 52-53; *Schafrath*, 1 Vet.App. at 593. Although the Secretary argues that the Board's finding that Ms. Molitor was not credible excused its failure to specifically discuss that G.C. opinion, Oral Argument at 30:31-50, 32:20-55, that argument puts the cart before the horse. Except as provided in § 3.159(d) ("Circumstances where VA will refrain from . . . providing assistance."), which the Board did not discuss and the Secretary did not invoke in this case, a claimant's credibility does not abrogate or extinguish VA's duty to assist a claimant in developing his or her claim because such development may produce evidence that substantiates the claim or otherwise bolsters or rehabilitates a claimant's credibility.

Accepting the Secretary's position would create a vicious circle in which VA could refuse to attempt to obtain evidence that could corroborate a claimed stressor on the ground that the record does not already contain evidence that corroborates the claimant's description of the stressor. Such

---

[5] To the extent that the duty to assist compels VA, in some circumstances, to assist claimants in obtaining statements from witnesses to claimed in-service personal assaults as set forth in *Forcier*, 19 Vet. App. at 422, any statements from the identified witnesses to claimed initiation rape here would also meet this standard. *See* R. at 287, 3149.

an interpretation of section 5103A is untenable, particularly where a credibility exception to the duty to assist was available to VA, wherein it could have found, if it believed such a conclusion was at all supportable, that her claim was inherently incredible. *See* 38 C.F.R. § 3.159(d)(2). The Board presumably did not believe that to be the case. *See* Oral Argument at 30:31-50, 32:20-55.

Accordingly, the Court holds that where, as here, a claimant pursuing service connection for PTSD based on an in-service personal assault adequately identifies relevant records of fellow servicemembers that may aid in corroborating the claimed assault, G.C. Precedent Opinion 05-14 is applicable to the claim and VA must either attempt to obtain such records or notify the claimant why it will not undertake such efforts. The Board's failure to discuss the G.C. opinion and VA's lack of efforts to attempt to obtain the third-party records identified by Ms. Molitor when assessing whether VA satisfied its duty to assist renders inadequate the Board's reasons or bases for denying her claim. *See Todd*, 27 Vet.App. at 87; *Schafrath*, 1 Vet.App. at 593; *Gilbert*, 1 Vet.App. at 57. Remand is therefore warranted for the Board to address that issue and order any additional development it finds necessary in accordance with G.C. Precedent Opinion 05-14. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

### E. Other Matters

Given the foregoing disposition, the Court need not address Ms. Molitor's other reasons-or-bases arguments. *See* Appellant's Br. at 22-25; Reply Br. at 5-8. However, for the sake of guidance to the Board on remand, *see Quirin v. Shinseki*, 22 Vet. App. 390, 395 (2009), the Court notes two additional issues that warrant attention. First, contrary to the Secretary's suggestion, *see* Oral Argument at 37:45-39:06, *but see id*. at 40:32-56, a lack of evidence of behavior changes in service does not constitute negative evidence against a claim for service connection for PTSD based on an in-service personal assault. The absence of evidence only tends to prove the nonexistence of a fact if the fact would have ordinarily been recorded. *See AZ*, 731 F.3d at 1315-18 (surveying the common law, Federal Rules of Evidence 803(7) and (10), and this Court's caselaw and concluding that "basic evidentiary principles preclude treating the absence of a record of an unreported [event] as evidence of the nonoccurrence of the [event]"); *see also Fountain v. McDonald*, 27 Vet.App. 258, 272 (2015); *Horn v. Shinseki*, 25 Vet.App. 231, 239 n.7 (2012); *Buczynski v. Shinseki*, 24 Vet.App. 221, 224 (2011).

Although VA recognizes that a victim of personal assault may experience behavior changes contemporaneous to or shortly after an assault, *see* 38 C.F.R. § 3.304(f)(5), VA also acknowledges, by express incorporation of the *Diagnostic and Statistical Manual of Mental Disorders*, Fifth Edition (DSM-5), into its regulation regarding diagnosis of mental disorders, 38 C.F.R. § 4.125 (2016), that "there may be a delay of months, or even years," before PTSD symptoms manifest. DSM-5 at 276 (describing "delayed expression" PTSD, previously known as "delayed onset" PTSD). Because behavior changes do not necessarily manifest immediately after a personal assault, it cannot be expected that they would appear in service in every instance of an assault; therefore, a lack of behavior changes in service cannot act as evidence against the occurrence of the assault. *See AZ*, 731 F.3d at 1318; *Fountain*, 27 Vet.App. at 272; *Horn*, 25 Vet.App. at 239 n.7; *Buczynski*, 24 Vet.App. at 224. To conclude otherwise would be to fundamentally ignore the liberalizing intent of § 3.304(f)(5), which was designed to make it easier for claimants to prove the occurrence of in-service assaults, not to erect another hurdle to corroboration. *See Patton*, 12 Vet.App. at 280; Post-Traumatic Stress Disorder Claims Based on Personal Assault, 65 Fed.Reg. 61,1132, 61,1132 (Oct. 16, 2000) (proposing to amend § 3.304(f) to address the difficulty of producing evidence to prove the occurrence of an in-service personal assault).

Second, the Court notes that Ms. Molitor has not yet received a VA examination or opinion that conforms with the DSM-5. Although the most recent VA opinion was rendered in January 2015, five months after VA amended its rating schedule to require examinations that conform with the DSM-5, *see* Schedule for Rating Disabilities—Mental Disorders and Definition of Psychosis for Certain VA Purposes, 79 Fed.Reg. 45,093, 45,093-45,103 (interim final rule published Aug. 4, 2014), the January 2015 VA psychologist appears to have applied the PTSD diagnostic criteria from the prior version of the DSM. *Compare* R. at 33 (requiring for a diagnosis of PTSD, inter alia, that the veteran's response to the claimed stressor "involved intense fear, helplessness, or horror"), *with* AM. PSYCHIATRIC ASS'N, DSM-5 PTSD FACT SHEET 1 (2013) ("Language stipulating an individual's response to the event—intense fear, helplessness or horror, according to DSM-IV—has been deleted because that criterion proved to have no utility in predicting the onset of PTSD."). Therefore, the Board, on remand, must consider and address whether a new VA examination or opinion is necessary to decide the claim. *See Barr v. Nicholson*, 21 Vet.App. 303, 311 (2007) ("[O]nce the Secretary undertakes the effort to provide an examination, . . . he must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be

provided."); *Bowling v. Principi*, 15 Vet.App. 1, 12 (2001) (citing 38 C.F.R. § 19.9(a) when holding that the Board has a duty to remand a case "[i]f further evidence or clarification of the evidence or correction of a procedural defect is essential for a proper appellate decision").

Ms. Molitor is free on remand to present any additional arguments and evidence to the Board in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for [the Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

### III.  CONCLUSION

Upon consideration of the foregoing, the May 12, 2015, Board decision is SET ASIDE and the matter is REMANDED for further development, if necessary, and readjudication consistent with this decision.