# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-0495

ELIZABETH M. WALSH, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided February 24, 2020)

*Kaitlyn C. Degnan*, of Providence, Rhode Island, was on the brief for the appellant.

*Richard J. Hipolit*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; *Christopher W. Wallace*, Deputy Chief Counsel; and *Ronen Morris*, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and PIETSCH and TOTH, *Judges*.

TOTH, *Judge*: A veteran is entitled to disability compensation when a service-connected disability causes *or* aggravates a non-service-connected disability. In a precedent opinion, the VA General Counsel (G.C.) determined that obesity, although itself not a disability for which compensation may be awarded, can constitute an "intermediate step" in demonstrating service connection on a secondary basis for another condition.

Elizabeth M. Walsh appeals the Board's denial of service connection for hypertension and sleep apnea. The question raised in this case is whether this "intermediate step" is limited to situations in which a service-connected disability *causes* obesity—the hypothetical situation used by the G.C. opinion—or also embraces situations in which a service-connected disability *aggravates* obesity. We conclude that, whatever the phrasing of the G.C. opinion, there is no legal basis to recognize a causal relationship but not an aggravating one in these circumstances. Because the December 2017 Board decision relied on a medical opinion that did not adequately address whether secondary service connection for hypertension and sleep apnea was warranted based on a theory that the veteran's obesity was aggravated by service-connected conditions, we vacate and remand for further proceedings.

Ms. Walsh served on active duty for training in the Army Reserves from January to June 1978. During this period, she fell and injured both knees. In September 1978, she was granted service connection for bilateral chondromalacia, a breakdown of cartilage in the knee joint that causes pain when bones rub together.[1] In the years that followed, the bilateral knee ratings were increased and service connection was also granted for, among other things, arthritis in both hips and a low back disability. Per the veteran, because of pain and the soporific effects of prescribed pain medication, these conditions severely limited her mobility.

In June 2009, Ms. Walsh sought disability compensation for hypertension and a "sleeping condition" as secondary to her service-connected knee, hip, and back conditions. R. at 3158. The VA regional office denied the claims and she appealed. While appellate litigation proceeded, the veteran underwent a VA sleep study, which diagnosed mild obstructive sleep apnea. In an April 2014 report, a VA examiner opined that Ms. Walsh's sleep apnea was "likely due to her documented weight gain/obesity" and that the onset of hypertension coincided with "increased weight/obesity." R. at 1694-95. But the examiner opined that neither sleep apnea nor hypertension was caused or aggravated by service-connected knee, hip, or back conditions. VA continued to deny the claims.

The Board remanded the claims in May 2016. Noting the veteran's reports that she was a "very athletic and active adult" before her service-connected disabilities began and the most recent examiner's attribution of sleep apnea and hypertension to obesity, the Board sent the service-connection claims back for a new etiology opinion. Specifically, it asked for an examiner to address whether it was at least as likely as not that Ms. Walsh's obesity, which was "noted as the cause" of her hypertension and sleep apnea, was either caused *or* aggravated by service-connected disabilities. R. at 676-77.

While VA was attempting to obtain such an opinion, G.C. Precedent Opinion 1-2017 was issued, which discussed the potential for disability compensation based on obesity. As a preliminary matter, the opinion generally determined that obesity itself was ineligible for service connection on direct or secondary bases because it did not qualify as a disease or injury. G.C. Prec. Op. 1-2017, at 2-7 (Jan. 6, 2017).[2] (We subsequently held that we lacked jurisdiction to consider

---

[1] *Knee Pain (Chondromalacia Patella)*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/15607-knee-pain-chondromalacia-patella.

[2] Available at https://www.va.gov/OGC/docs/2017/VAOPGCPREC1-2017.pdf. The opinion recognized the

a challenge to this determination because it would entail impermissible judicial review of the rating schedule's content. *Marcelino v. Shulkin*, 29 Vet.App. 155, 157-58 (2018) (citing 38 U.S.C. § 7252(b)).) The G.C. opinion nevertheless reasoned that "[o]besity may be an 'intermediate step' between a service-connected disability and a current disability that may be service connected on a secondary basis under 38 C.F.R. § 3.310(a)." G.C. Prec. Op. 1-2017, at 2-3. Somewhat presciently for our purposes, the opinion used the example of a veteran seeking service connection for hypertension on the theory that the "veteran's service-connected back disability causes obesity due to lack of exercise, which leads to hypertension." *Id*. at 9.

> Under 38 C.F.R. § 3.310(a), disability which is proximately due to or the result of a service-connected disease or injury is service connected. "Proximate cause" is defined as a "cause that directly produces an event and without which the event would not have occurred." When there are potentially multiple causes of a harm, an action is considered to be a proximate cause of the harm if it is a substantial factor in bringing about the harm and the harm would not have occurred but for the action.
>
> A determination of proximate cause is basically one of fact, for determination by adjudication personnel. With regard to the hypothetical presented in the previous paragraph, adjudicators would have to resolve the following issues: (1) whether the service-connected back disability caused the veteran to become obese; (2) if so, whether the obesity as a result of the service-connected disability was a substantial factor in causing hypertension; and (3) whether the hypertension would not have occurred but for obesity caused by the service-connected back disability. If these questions are answered in the affirmative, the hypertension may be service connected on a secondary basis.

*Id*. at 9-10 (citations and some quotation marks omitted). Thus, the first step asks about the connection between a service-connected disability and obesity, while the second and third steps ask about the connection (proximate and but-for causation) between obesity and the disability for which secondary service connection is sought.

VA eventually obtained a medical opinion, but because it did not align with the framework set out in the G.C. opinion, VA sought another one. In its opinion request, VA asked (under the "at least as likely as not" standard): (1) whether the veteran's service-connected disabilities, including medications prescribed to treat them, "caused" the veteran to gain weight or become

---

potential to award extraschedular compensation in a particular case where "obesity resulting from a service-connected disease or injury is found to produce impairment beyond that contemplated by the applicable provisions of VA's rating schedule" for the service-connected disability. G.C. Prec. Op. 1-2017, at 1.

obese; (2) if so, whether the weight gain or obesity resulting from the service-connected disability was a substantial factor in "causing" hypertension or sleep apnea; and (3) again, if so, whether hypertension or sleep apnea would not have occurred but for weight gain or obesity "caused" by the service-connected disability. R. at 21. If the medical expert answered "yes" to these three questions with respect to one of the conditions (hypertension or sleep apnea) but not the other, VA asked the expert to further address whether the other condition was "proximately due to" or "aggravated (permanently worsened beyond the natural progress of the disease)" by the now-service-connected condition or its medications.[3] *Id.*

The requested opinion was provided in July 2017 by a physician who was on the staff of the local VA medical center and an assistant professor of medicine at a nearby university. After fully listing all service-connected disabilities, she said with respect to the first question that she couldn't state "with greater than 50% probability" that such disabilities "contributed to obesity." R. at 17. As relevant here, she observed that

> there is a complex interaction between energy expenditure and caloric intake. Obesity develops over a period of time. Physical activity, caloric intake, genetic factors, microbiome are all important factors. A recent longitudinal study that evaluated the cause of obesity noted that physical activity decreased the probability of being overweight by 4.3-6.5% based on a linear model but did not support the causal link between Leisure Time Physical activity and [being] overweight.

*Id.* Referencing the "proximate cause" language of G.C. Opinion 1-2017, the physician said she couldn't state, based on the current evidence and medical literature, "that there is a cause-effect relationship between arthritis of the back or of the knee and obesity." *Id.* As for the second question, the physician advised that obesity is "a significant factor that causes obstructive sleep apnea [and] hypertension." R. at 18. Last, the physician opined that it was as likely as not that sleep apnea and hypertension "would not have occurred but for" obesity. R. at 19. (Given her responses to the first three questions, the physician did not answer the remaining ones.) She concluded that, although there is evidence that obesity is "related to hypertension and sleep apnea," "there is no clear-cut evidence that decreased physical activity secondary to arthritis is causally related to [o]besity." *Id.*

---

[3] The Court recently clarified in *Ward v. Wilkie*, 31 Vet.App. 233, 237-38 (2019), that the proper standard in an aggravation inquiry is not whether there was "permanent worsening" but rather "any increase" in disability.

The Board relied on the physician's opinion for the conclusion that "obesity cannot be attributed to [the veteran's] service-connected disabilities" and denied service connection for hypertension and sleep apnea on a secondary basis. R. at 7. The medical opinion was adequate and probative, the Board found, because it was "unequivocally stated" and "supported by the evidence of record and a detailed rationale." *Id.* This appeal followed.

Ms. Walsh makes several arguments on appeal. Among these, she contends that the analysis set out in G.C. Opinion 1-2017 requires a determination of whether obesity was caused *or* aggravated by a service-connected disability and that the 2017 VA medical opinion fails to address aggravation. Appellant's Br. at 9-11. The Secretary does not directly address this argument, stating instead that the 2017 medical opinion "provided the Board with the information it needed to make a fully informed decision" and that Ms. Walsh "does not challenge the propriety of the General Counsel opinion or show how the [medical] expert deviated from the relevant and required analysis." Secretary's Br. at 8. G.C. Opinion 1-2017 does not mention the concept of aggravation in the portion that discusses obesity as an "intermediate step" and references only subsection (a) of 38 C.F.R. § 3.310. Nevertheless, the principles contained in § 3.310 make any distinction in G.C. Opinion 1-2017 between causation and aggravation legally untenable.

As an initial matter, we note that G.C. precedent opinions are issued by VA's chief legal officer and are binding on the Board. 38 U.S.C. § 7104(c). They are not, however, binding on the Court. *Molitor v. Shulkin*, 28 Vet.App. 397, 408 (2017). Instead, because such opinions lack the formalities of notice-and-comment rulemaking, the Court defers to them in accordance with their "'power to persuade.'" *Wanless v. Shinseki*, 618 F.3d 1333, 1338 (Fed. Cir. 2010) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

To properly analyze Ms. Walsh's arguments with respect to G.C. Opinion 1-2017, we must start with the language of the regulation governing secondary service connection. Section 3.310 first provides that "disability which is proximately due to or the result of a service-connected disease or injury shall be service connected." 38 C.F.R. § 3.310(a) (2019). This describes a causal relationship. *See MacPhee v. Nicholson*, 459 F.3d 1323, 1327 (Fed. Cir. 2006). In the next subsection, the regulation specifies that "[a]ny increase in severity of a nonservice-connected disease or injury that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the nonservice-connected disease, will be service connected." 38 C.F.R. § 3.310(b). This, as the provision itself recognizes, describes an aggravating relationship.

5

*See id.* The operative language in these provisions is essentially identical. Both discuss something that "is proximately due to or the result of a service-connected disease or injury" and advise that this "shall [or will] be service connected." Nothing in this language justifies a distinction between causation and aggravation in the first step of the analysis in G.C. Opinion 1-2017.

Aside from (b)'s "natural progress" clause, the only difference between the two subsections is the subject of the operative language: in (a) it is a "disability," whereas in (b) it is an "increase in severity of a nonservice-connected disease or injury." But, for purposes of the present inquiry, these terms are conceptually synonymous. Our decision in *Allen v. Brown*, 7 Vet.App. 439, 448 (1995) (en banc), makes clear that "when aggravation of a veteran's non-service-connected condition is proximately due to or the result of a service-connected condition, such veteran shall be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation."[4] In other words, aggravation is just causation of an increase in disability—i.e., a discrete portion of disability—rather than of the whole disability itself. Thus, *Allen* held that the term "disability" includes "any additional impairment of earning capacity resulting from an already service-connected condition." 7 Vet.App. at 448. The remainder of subsection (b) bears this out. It instructs VA adjudicators to "determine the baseline and current levels of severity under the Schedule for Rating Disabilities . . . and determine the extent of aggravation by deducting the baseline level of severity, as well as any increase in severity due to the natural progress of the disease, from the current level." 38 C.F.R. § 3.310(b). Therefore, the fact that subsection (b) uses the phrase "increase in severity of a nonservice-connected disease or injury" rather than "disability," as appears in subsection (a), is of no legal moment.

In short, there is no permissible basis in the relevant regulation for concluding that obesity may be an "intermediate step" in a secondary-service-connection analysis when service-connected disability *causes* it, but not when service-connected disability *aggravates* it. So, where does that leave G.C. Opinion 1-2017? The Secretary's brief is carefully agnostic as to whether G.C. Opinion 1-2017 takes a position on the aggravation-of-obesity issue and, if so, whether that position is

---

[4] *Allen*'s conclusion was based on a reading of the relevant statutes. Before *Allen*, "VA paid compensation for a disability on a secondary basis *only* if the secondary condition was *entirely* caused by a service-connected disability." Claims Based on Aggravation of a Nonservice-Connected Disability, 62 Fed. Reg. 30,547, 30,547 (June 4, 1997) (proposed rule) (emphasis added).

consistent with § 3.310. Importantly, the Board may not rely on a G.C. opinion that is inconsistent with a valid regulation. *See, e.g.*, *Franklin v. Brown*, 5 Vet.App. 190, 192-93 (1993).

Based on our review of G.C. Opinion 1-2017, however, we discern no necessary inconsistency between it and § 3.310 on this issue.[5] It's true that the portion of the opinion addressing obesity as an "intermediate step" in the secondary-service-connection context never mentions aggravation. But we do not read that omission as an affirmative position that aggravation is a legally irrelevant consideration. G.C. Opinion 1-2017 provides guidance on how to analyze obesity as an "intermediate step" using a hypothetical "example" in which a "service-connected back disability causes obesity due to lack of exercise, which leads to hypertension." G.C. Prec. Op. 1-2017, at 9. The causal relationship between the service-connected condition and obesity (causation) is no more integral to the opinion's analytic framework than is the identity of the service-connected condition (a back disability). This can be seen by substituting aggravation for causation in the hypothetical as follows: (1) whether the service-connected back disability *aggravated* the veteran's obesity; (2) if so, whether the *aggravation of obesity* as a result of service-connected disability was a substantial factor in causing hypertension; and (3) whether the hypertension would have occurred but for obesity *aggravated by* the service-connected back disability. *Cf. id.* Such an inquiry is consistent with both the legal principles of § 3.310(b) and the analytic principles sketched out by the General Counsel.

In other words, properly construed, G.C. Opinion 1-2017 does not purport to prohibit inquiry into whether a service-connected disability aggravates a veteran's obesity. And for good reason, as this would contradict VA's aggravation regulation. So, to be clear: Despite the G.C. opinion's silence regarding aggravation, the Board, in accordance with § 3.310(b), must consider aggravation in this context when the theory is explicitly raised by the veteran or reasonably raised by the record.

With this legal matter resolved, we turn to the Board decision here. We conclude that the Board clearly erred in finding the 2017 VA medical opinion adequate. Among other requirements, to be adequate, a VA medical opinion must address the medical question at issue in enough detail that the Board can make a fully informed evaluation of the claim. *Atencio v. O'Rourke*, 30 Vet.App. 74, 89 (2018). Here, the Board found in its May 2016 remand that the evidence of record

---

[5] Ms. Walsh's appeal does not implicate, and we have no occasion to address, any other aspect of G.C. Opinion 1-2017's analysis.

7

necessitated a medical opinion as to whether service-connected disability caused *or* aggravated her obesity. R. at 676-77. But the 2017 opinion on which it relied is silent on the question of aggravation of obesity. To the extent the Board thought, after issuance of G.C. Opinion 1-2017, that a medical opinion—on whether service-connected disability aggravated Ms. Walsh's obesity—was no longer legally relevant, the present opinion dispels that misconception. But the fact remains that the physician was not asked for a medical opinion on the question of aggravation and her report provides no information on which the Board can rely to adjudicate that theory of service connection. Thus, the Board clearly erred in finding the 2017 VA opinion adequate to decide these claims. We remand for the Board to obtain a new medical opinion that provides sufficient information on relevant medical issues—such as whether service-connected knee, hip, and back disabilities caused *or* aggravated Ms. Walsh's obesity—to allow it to make a "fully informed" decision on the hypertension and sleep apnea claims. *Atencio*, 30 Vet.App. at 89.

Finally, we note that Ms. Walsh makes several other arguments, such as that the 2017 VA medical opinion was inadequate because the physician used improperly high standards when resolving medical questions and that the Board clearly erred in finding that she did not have a current sleep apnea disability. (Regarding this last assertion, she points to a February 2013 VA diagnostic polysomnography report diagnosing mild obstructive sleep apnea and prescribing continuous positive airway pressure therapy. R. at 771-72.) Given our determination that remand is already warranted, we need not resolve those arguments now, nor do we think they are appropriate for resolution in a precedential decision. We trust that the Board, as part of its obligation on remand to provide a critical reassessment of the claims, *see Roberts v. McDonald*, 27 Vet.App. 108, 113-14 (2014), will duly consider these arguments and all relevant legal and factual disputes.

The December 8, 2017, Board decision is VACATED and the claims are REMANDED for further proceedings consistent with this opinion.